[No. A080118. First Dist., Div. Five. Jan. 26, 1999.]

RAMON ZÁMUDIO, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Respondents.

---

**COUNSEL**

William C. Gordon; and B. E. Bergesen III for Plaintiff and Appellant.

Lynch, Gilardi & Grummer and Daniel F. McLennon for Defendants and Respondents.

---

**OPINION**

**STEVENS, J.**—Appellant Ramon Zamudio contends the trial court wrongly granted summary judgment in his action against the City and County of San Francisco, Tutor-Saliba Corporation, and Largo Concrete, Inc. The issue presented is whether an injured employee of a subcontractor on a construction project, who has received workers' compensation benefits for his injury, is barred from pursuing a lawsuit in tort for the same injury against the owner of the construction project, its construction manager, and his employer. We conclude summary judgment was properly granted, and affirm the trial court's rulings.

## I. FACTS AND PROCEDURAL HISTORY

Appellant was a laborer at a construction site, helping to pour concrete for a new parking garage on Airport Boulevard in San Bruno. Concrete laborers utilized portable structures called flying forms. Appellant was moving plywood on the seventh floor of the building under construction at the time of the accident. When he stepped on the piece of plywood resting between two flying forms, the plank gave way, causing appellant to fall and seriously injure himself. It was alleged that appellant's employer, Largo Concrete, Inc. (Largo), had not properly secured one side of the plank to the structure upon which the work was being performed. Appellant received workers' compensation benefits for the injury.

Largo and Tutor-Saliba Corporation (Tutor), the construction manager of the project, had entered into a contract whereby Largo was to perform the concrete formwork in accordance with plans and specifications. When the concrete pouring was taking place and appellant was injured, his work was under the immediate supervision of the concrete subcontractor for the project, Largo. Largo's superintendent, Plumer Peeler, supervised the concrete work including appellant's activities. Largo selected and placed the

concrete pouring forms and, through Peeler, instructed appellant where to put the plywood he was carrying when he fell. Peeler also conducted safety meetings for appellant and the other concrete workers.

The City and County of San Francisco (CCSF), the owner of the project, contends that it exercised no direct control over appellant or the concrete work subcontracted to Largo. Nor did it advise Largo or appellant how to conduct the concrete work. However, CCSF inspectors were on the construction site daily and had the right to inspect the work for quality control purposes. CCSF's chief inspector, Scott Taylor, and several assistants would inspect the forms before concrete was poured, and were generally familiar with how the flying forms were joined and the plywood was laid down by Largo employees. The inspectors never had discussions with anyone about the manner in which Largo was securing the plywood in between the flying forms.

Under the various contracts for the construction project, CCSF and Tutor contend that they did not assume any duties or responsibilities to any subcontractor or supplier. Paragraph 11.d.2 of the main contract between CCSF and Tutor provides that the "Safety of all persons employed by Contractor or subcontractors . . . on Site shall be the full responsibility of Contractor."[1] The CCSF-Tutor contract (¶ 7.c.1) and the Tutor-Largo contract (§ 1) read together provide that CCSF and the Tutor representative "shall not supervise, direct, or have control over, or be responsible for, Contractor's means, methods, techniques, sequences or procedures of construction or for the safety precautions and programs incident thereto, or for any failure of Contractor to comply with laws and regulations applicable to the furnishing or performance of Work." CCSF and Tutor both retained the right to observe and administer the project to ensure compliance with the contract documents, but relinquished supervision or control over the procedures and methods of construction to be employed by the subcontractors.

Appellant filed this action seeking damages for personal injuries suffered as a result of the fall at the construction site. He brought suit against: (1) CCSF, the owner of the project site; (2) Tutor, the construction manager for the project; and (3) Largo, the concrete subcontractor and appellant's employer at the time of the accident, which provided appellant with workers' compensation benefits through its union subcontractor, N.M.N. Construction, Inc. (N.M.N.). Appellant contended Largo was negligent and directly responsible for his injuries. He also contended that CCSF and Tutor were

---

[1]Apparently through inadvertence, this provision of the contract was neither referred to nor briefed by either party in the trial court or on appeal. At oral argument of this appeal, the parties agreed to inclusion of this provision in the record on appeal.

vicariously responsible for Largo's acts and liable for their own independent negligence. Finally, he contended that the failure to provide adequate safety equipment created a dangerous condition which contributed to the fall and resulting injury. The trial court first granted Largo's motion to file an amended answer (which added the affirmative defense of "special employer" for purposes of the exclusive remedy provisions of the workers' compensation laws) and then granted summary judgment to all three defendants, who are respondents in this appeal.

## II. DISCUSSION

### A. The Judgment in Favor of Largo

Although appellant filed a notice of appeal from the trial court's order granting Largo's motion to file an amended answer, he has not briefed or raised any issue relating to this nonappealable order. (See *Vallera* v. *Vallera* (1944) 64 Cal.App.2d 266, 272 [148 P.2d 694].) Nor has appellant briefed any issue relating to the appealable judgment in favor of Largo following the trial court's granting of its summary judgment motion. We conclude that appellant has abandoned all potential issues on appeal as to Largo. The trial court's judgment in favor of Largo may be affirmed on purely procedural grounds. (See *Berger* v. *Godden* (1985) 163 Cal.App.3d 1113, 1119-1120 [210 Cal.Rptr. 109].)

Notwithstanding the existence of procedural grounds for affirmance, the judgment in favor of Largo was also substantively correct. It is undisputed that appellant received workers' compensation benefits as an employee, through Largo's affiliated union-signatory company N.M.N.; and consequently, Largo was immune from tort liability under the exclusive remedy provisions of the Workers' Compensation Act. (See *Privette* v. *Superior Court* (1993) 5 Cal.4th 689, 696-698 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*); accord, *Toland* v. *Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253, 267-268 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*).)

### B. Judgment in Favor of CCSF and Tutor

#### 1. Standard of Review

We review a summary judgment de novo. (*Environmental Protection Information Center* v. *Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1011, 1015-1016 [50 Cal.Rptr.2d 892].) To determine whether a summary judgment was proper, we follow the same approach required of the trial court. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179

Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].) Summary judgment is proper "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

## 2. No Basis for Vicarious Liability After Privette and Toland

■ The Supreme Court decisions in *Privette* and *Toland* defeat appellant's attempts to shift the legal liability for the accident from his immune employer Largo to CCSF and Tutor. The fact that appellant's employer (Largo) was immune from suit under the workers' compensation laws does not afford a basis for vicarious liability against other uninvolved parties— such as the owner of the property (CCSF) and the construction manager (Tutor) who hired Largo to perform the contract work. (See *Privette, supra,* 5 Cal.4th at p. 702; *Toland, supra,* 18 Cal.4th at pp. 267-268.)

■ We quote the most relevant portion of *Toland* which analyzed and reaffirmed *Privette*: "Therefore, under *Privette, supra,* 5 Cal.4th 689, even though a person hiring an independent contractor to do inherently dangerous work can be liable under the peculiar risk doctrine for failing to see to it that a hired contractor take special precautions to protect neighboring property owners or innocent bystanders, such a person has no obligation to specify the precautions an independent hired contractor should take for the safety of the contractor's employees. Absent an obligation, there can be no liability in tort. [Citations.] [¶] Thus, contrary to plaintiff Toland's assertion, our decision in *Privette, supra,* 5 Cal.4th 689, bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person, irrespective of whether recovery is sought under the theory of peculiar risk set forth in section 416 or section 413 of the Restatement Second of Torts.[2] *In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage.* Our view is shared by an overwhelming majority of courts that have considered the issue. [Citations.]" (*Toland, supra,* 18 Cal.4th at pp. 267-268, original italics omitted, italics added.)

■ Thus, the *Privette-Toland* rule stands for the proposition that hirers of a subcontractor are not vicariously liable for injuries to the subcontractor's own employees. (See *Privette, supra,* 5 Cal.4th at p. 702; *Toland, supra,* 18 Cal.4th at pp. 267-268; cf. also *Grahn v. Tosco Corp.* (1997) 58

---

[2]Unless otherwise indicated, all subsequent section references are to the Restatement Second of Torts.

Cal.App.4th 1373, 1398 [68 Cal.Rptr.2d 806] (*Grahn*).) In the instant case, the accident occurred during Largo's pouring of concrete when its employee (appellant) fell from a plywood plank that was resting between two concrete pouring forms. Appellant had believed the plank was a properly secured bridge between the forms, although in fact it was being used only as a distance gauge between the forms. Under these circumstances, and in the absence of evidence disclosing CCSF's or Tutor's exercise of the requisite degree of control over the details of the concrete work undertaken by Largo, tort liability cannot be shifted to the owner of the construction project or its construction manager.

Appellant contends that, under the authority of *Kuntz* v. *Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 104-105 [18 Cal.Rptr. 527, 368 P.2d 127] (*Kuntz*), CCSF and Tutor may nevertheless be liable because each had sufficient knowledge of a recurring dangerous condition or construction practice. He also contends CCSF and Tutor had sufficient control over Largo's work to make their failure to protect him actionable. Relying upon *Grahn, supra*, 58 Cal.App.4th 1373, it is argued that, under these circumstances, *Privette* would not bar his assertions of tort liability against CCSF and Tutor.

Appellant is mistaken in his reliance upon *Grahn*. It is important to recognize that *Grahn* preceded the Supreme Court ruling in *Toland*, a ruling which reaffirmed and extended *Privette*. In the body of its decision, the court in *Grahn* mentioned that the Supreme Court had granted review in *Toland* (*Grahn, supra*, 58 Cal.App.4th at p. 1382, fn. 3); but it could not, and did not, anticipate *Toland*'s sweeping holding which barred the assertion of vicarious liability in tort against the hirers of a subcontractor for injuries to the subcontractor's own employees. Because *Grahn* did not have the benefit of this most recent holding, its reasoning cannot be relied upon to support appellant's argument. Further, it must be recognized that even *Grahn* would not allow tort liability to be imposed against an owner of the construction project or its manager which did not control the work in question or directly cause the injury—which is the case here. (See p. 1398.)

We also view *Kuntz* as inapplicable to the case on review. This decision is distinguishable, both legally and factually. If for no other reason, *Kuntz* is distinguishable legally because this early decision was not applying the principles of *Privette* and *Toland*, which are crafted to insulate an owner and general manager from tort liability arising from a subcontractor's acts which caused injury to its employee. Under *Kuntz*, the recurring dangerous condition constituted inherently dangerous work pursuant to section 413. (See *Kuntz, supra*, 57 Cal.2d at p. 104.) Liability would be imposed due to the

owner's failure to protect the subcontractor's employee from the danger. The imposition of vicarious liability runs contrary to the holding in *Toland*. (18 Cal.4th at pp. 265-267.)

*Kuntz* is factually distinguishable in that liability of the general contractor (Webb) arose from the negligent acts of one subcontractor, which resulted in injuries to an employee of another subcontractor. Under its facts, the general contractor (Webb) could seek equitable indemnity from the subcontractor that was actively negligent and whose acts resulted in injury to Kuntz. (*Kuntz, supra,* 57 Cal.2d at pp. 104-105.) Here, appellant has received workers' compensation benefits from his employer (Largo), which was the actively negligent party. CCSF and Tutor may not seek equitable indemnity from Largo. Thus, there exists potential unfairness in imposing liability upon the hiring persons (CCSF and Tutor) whereas the party primarily responsible for appellant's injuries (Largo) is limited to providing workers' compensation coverage. (*Toland, supra,* 18 Cal.4th at pp. 267-268.) The concept of fairness was not a topic of consideration by the Supreme Court in deciding *Kuntz*, whereas the Supreme Court highlighted this concept in *Privette, supra,* 5 Cal.4th at page 698, and *Toland, supra,* 18 Cal.4th at page 261.

### 3. *Claims of "[D]irect" Liability on the Part of CCSF and Tutor*

Citing section 414, appellant asserts that *Privette* and *Toland* do not bar "direct" liability against an owner and/or general contractor when their actions cause injury to a subcontractor's employee.[3] It is claimed that CCSF and Tutor may be found directly liable for their own independent negligence because they failed to use reasonable care when they retained and exercised control over the concrete work. Assuming (without deciding) appellant's characterization between "vicarious" and "direct" liability is an accurate statement, he still fails to raise triable issues of material fact to support this claim.

It is undisputed that neither CCSF nor Tutor was in the vicinity at the time of the fall. Further, the record shows that only Largo employees handled the forms and the plank upon which appellant walked just prior to his injury, and that neither CCSF nor Tutor employees supervised or directed the method used to position and complete the forms to be used in pouring the concrete floors. At bottom, there is no evidence of any *affirmative act* by CCSF or Tutor which contributed to appellant's fall.

---

[3]Section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

Again relying upon *Grahn*, appellant argues that there are facts present which support an independent negligence theory of liability against CCSF and Tutor, namely: retention of control over Largo's activities, constructive knowledge of the dangerous practice, and failure to prevent Largo from negligently performing its duties. This theory of liability is embodied in section 414. However, under this theory, liability attaches only when the owner or general contractor retains control "over the operative details of the hired work." (*Toland, supra,* 18 Cal.4th at p. 264, fn. 2.)[4] In the absence of direct management over the means and methods of the independent contractor's work or the provision of the equipment which caused the injury, no legal duty is created. (*Grahn, supra,* 58 Cal.App.4th at p. 1393, citing *Kuntz, supra,* 57 Cal.2d at p. 107.)

### 4. *The Record on Appeal Supports Summary Judgment Because There Is No Evidence CCSF or Tutor Controlled Appellant's Work*

Appellant also claims there were disputed facts in the record which would preclude the trial court from granting summary judgment, but we disagree. For example, employees of Largo, CCSF, or Tutor may have participated in discussions about the general subject of workplace safety; but this circumstance does not lead to the inference that CCSF or Tutor undertook responsibility for appellant's safety at the jobsite, or that there was any nexus between these general discussions and the failure to secure the plank from which he fell. Similarly, CCSF's right to inspect the concrete work for purposes of quality control does not demonstrate the exercise of sufficient control over the subcontracted work and thereby raise an issue precluding summary judgment. (See *Chatman* v. *Alameda County Flood Control etc. Dist.* (1986) 183 Cal.App.3d 424, 430-431 [228 Cal.Rptr. 257].) As the First Appellate District held in *Chatman,* the right to inspect premises for unsafe structural conditions, or efforts undertaken to increase public safety such as the inspections and generalized exhortations in favor of a safe workplace in this case, would not make a public entity automatically liable for all accidents which later occur; and summary judgment was, therefore, proper. (*Ibid.*) And finally, contrary to appellant's belated argument, the presence of a provision in the main contract delegating CCSF's safety responsibilities to Tutor, does not itself create a duty of care upon Tutor toward appellant and does not preclude summary judgment. (See *Lopez* v. *University Partners* (1997) 54 Cal.App.4th 1117, 1126 [63 Cal.Rptr.2d 359].)

■ In appellant's opening brief, much energy is directed to the apparent failure by CCSF and Tutor to file with the trial court the entire main contract

---

[4]At oral argument, appellant acknowledged that neither CCSF nor Tutor exercised control "over the operative details of the hired work." (*Toland, supra,* 18 Cal.4th at p. 264, fn. 2.)

between them relating to the construction project. Appellant complains that, while he sought the entire contract in discovery, only excerpts of the contract were presented.[5] Presumably, the inability of the trial court to consider the entire contract somehow prevented appellant from resisting the motions for summary judgment. Appellant does not explain why a motion to compel production of the entire contract was not filed. Nor is it explained why a continuance of the hearing, pursuant to Code of Civil Procedure section 437c, subdivision (h), was not sought. (See *Hill* v. *Physicians & Surgeons Exchange* (1990) 225 Cal.App.3d 1, 7-8 [274 Cal.Rptr. 702]; *Lewinter* v. *Genmar Industries, Inc.* (1994) 26 Cal.App.4th 1214, 1224 [32 Cal.Rptr.2d 305].) Moreover, although this very issue was mentioned in the points and authorities filed in opposition to summary judgment, such reference does not serve as a substitute for an evidentiary objection or request for continuance. (*American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1280 [241 Cal.Rptr. 466].) Appellant's objection was waived in the trial court. Thus, he may not now raise it on appeal.[6]

### 5. *No Liability for Alleged Dangerous Condition on Public Property*

■ Finally, appellant contends that there is a triable issue of fact with respect to whether CCSF had maintained a dangerous condition on public property under Government Code section 830 et seq. However, the only potential "dangerous condition" in the case before us was the plank from which appellant fell, and that plank was owned by Largo, not CCSF. The

---

[5]The record on appeal does not contain a filed copy of the entire contract, and only contains excerpts filed by CCSF. Therefore, we will simply assume, for purposes of this argument, that CCSF did not produce the entire contract for the trial court. It may be, of course, that CCSF did lodge a copy of the entire contract with the trial court that did not find its way into the record before us, as CCSF seems to suggest. The absence of any proper contemporaneous evidentiary objection or request for continuance upon which the trial court could have ruled makes it impossible for us to determine the matter. We simply assume, arguendo, that the entire contract was not before the trial court, and conclude this fact would not in itself have precluded summary judgment.

[6]Therefore, we need not reach the merits of appellant's argument that the filing of excerpts from the contract rather than the entire contract was assertedly improper under *Ritchey* v. *Villa Nueva Condominium Assn.* (1978) 81 Cal.App.3d 688, 696-697 [146 Cal.Rptr. 695, 100 A.L.R.3d 231]. In any event, *Ritchey* is distinguishable, since it simply held that any documents relied upon by an affiant must be attached to the affidavit. Here, CCSF's declarant attached to his declaration copies of the portions of the documents relied upon, and there was no proper objection to the alleged failure to file the entire document. Similarly, in *Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 816-817 [116 Cal.Rptr. 412], also relied upon by appellant, the court held that under the law as it then stood in 1974, all original documents, not photostatic copies, must be submitted to the court. That former rule was abrogated by the passage of former Evidence Code section 1511 (Stats. 1985, ch. 100, § 2, p. 237), and is not in issue here. Moreover, in view of the parties' stipulation at oral argument, this issue may be moot. (See fn. 1, *ante*.)

"dangerous condition" was not created or maintained by CCSF but by Largo, which set up the plank as a temporary distance gauge during its subcontracted work of pouring concrete. Here, CCSF's property was not itself dangerous. The danger facing appellant was his own employer's processes in the use of its forms. As long as CCSF did not act affirmatively to create or increase the risk of injury or did not retain control over the specific injury-causing activities of the injured worker's employer, *Privette* and *Toland* bar recovery. (See *Hayes* v. *State of California* (1974) 11 Cal.3d 469, 471-472 [113 Cal.Rptr. 599, 521 P.2d 855] [A public entity was not liable for creation of a dangerous condition on public property where the dangerous condition was in fact created by third parties, who attacked the plaintiffs.].)

Whatever the particular basis of liability urged by appellant, the crucial point remains that the record before the trial court showed CCSF and Tutor did not control the subcontractor's work; and they were, therefore, not liable for injuries to an employee of the subcontractor resulting from that work. (*Toland, supra*, 18 Cal.4th at pp. 267-268.)

III. DISPOSITION

The judgments of the trial court are affirmed.

Jones, P. J., and Haning, J., concurred.

A petition for a rehearing was denied February 24, 1999, and appellant's petition for review by the Supreme Court was denied May 26, 1999. Mosk, J., was of the opinion that the petition should be granted.