[No. A089737. First Dist., Div. Four. Jan. 30, 2001.]

MICHAEL KINNEY, Plaintiff and Appellant, v.
CSB CONSTRUCTION, INC., Defendant and Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Arns Law Firm, Robert S. Arns and Morgan C. Smith for Plaintiff and Appellant.

Law Offices of Jeffrey F. Paccassi and Judith A. Pemberton for Defendant and Respondent.

**OPINION**

**SEPULVEDA, J.**—Plaintiff Michael Kinney brought this action to recover damages for personal injuries he sustained when he fell from the scaffolding of a steel building he was employed by PB Erectors (PBE) to help construct. He contends that the general contractor on the project, defendant CSB

Construction, Inc. (CSB), negligently failed to require PBE, a subcontractor, to provide adequate protection against falls. The trial court granted summary judgment for CSB. The question presented is whether a general contractor who claims the power to control all safety procedures on the worksite may be liable to the injured employee of a subcontractor for failing to direct the subcontractor to take safety precautions where there is no evidence that any conduct by the general contractor contributed affirmatively to the injuries. We hold that in light of recent California Supreme Court holdings limiting the liability of general contractors for injuries to employees of subcontractors, liability cannot be imposed on the general contractor based upon a mere failure to require the subcontractor to take safety precautions, where the general contractor's failure is not shown to have affirmatively contributed to the creation or persistence of the hazard causing the plaintiff's injuries. Accordingly, we affirm the judgment for defendant.

BACKGROUND

For purposes of CSB's motion for summary judgment it was undisputed that plaintiff was injured when he fell approximately 15 feet while working as an ironworker employed by PBE. PBE in turn had been engaged by defendant CSB, the general contractor on a project to erect several steel buildings at the Bay Meadows racetrack in San Mateo County.

The contract between the owner and CSB declared the latter to be "solely and completely responsible for working conditions and the safety of all persons and property" on the site. It required CSB to "initiate, maintain, and comply with all safety and loss prevention precautions and programs required by the nature and performance of the work . . . [or by] applicable provisions of federal, state, and local safety laws," and to "eliminate or abate safety hazards created by or otherwise resulting from performance of the Work whether created by or resulting from it or one of its own subcontractors or vendors." The contract also called upon CSB to "require each of its subcontractors to agree in writing . . . to be bound to Contractor by the terms of this Contract . . . and to assume toward Contractor all of the obligations and responsibilities that Contractor . . . assumes toward Owner . . . ."

The subcontract between CSB and PBE expressly referred to the contract between CSB and the owner as one of certain "General Documents" by which PBE's work was governed. The subcontract required PBE to "supply at [PBE's] cost all labor, equipment, scaffolding, new materials, supervision, power and other things necessary to complete [PBE's] Work in the best

manner known to the trade and in accordance with the General Documents . . . ." It further required PBE to "timely perform . . . all obligations owed by CSB to Owner, whether arising under [the contract between CSB and the owner] or otherwise, to the extent that such obligations apply . . . [to] Subcontractor's Work or . . . duties or performance under this agreement . . . ." The subcontract also required PBE to furnish workers' compensation coverage as well as a policy of general liability insurance naming the owner, CSB, and CSB's directors, officers, and employees, as additional insureds. The subcontract further required PBE's work to "comply with all laws . . . applicable to the Work or Subcontractor's performance under this agreement including but not limited to all that deal with . . . health [and] safety . . . ."

The parties agreed for purposes of the summary judgment motion that during the performance of the subcontract, CSB "had the right to order any safety means or measures that it felt were appropriate" on the jobsite. Its site superintendent, Robert McDonald, testified in deposition that the job was run in such a way that "CSB would eliminate or abate safety hazards created by or otherwise resulting from performance of the work, whether created by or resulting from it or one of its subcontractors." If he saw an unsafe condition, he "had a right to do whatever [he thought was] appropriate." In the event of a disagreement with a subcontractor over safety procedures, CSB would discuss the matter with the subcontractor while suspending work; "ultimately" CSB "would have the final say." Specifically, "[i]f a subcontractor was working without adequate fall protection and [he] felt that fall protection was required, [he] would . . . tell them that they needed fall protection" and "would . . . stop the work until they had good fall protection." He saw it as "[o]ne of the jobs of the general contractor . . . to have an attitude of safety comes first, and if you see an unsafe condition, you tell the subcontractor to alleviate it." That was the way the job in question was run. However, he did not recall an instance in which he actually directed PBE or any of the other subcontractors on the job to alleviate an unsafe condition.

It was also undisputed that CSB did not give plaintiff any instructions as to how to perform his work. He received his instructions from his foreman. He received workers' compensation benefits for his injury.

Plaintiff appeals.[1]

---

[1]The notice of appeal was filed prior to rendition or entry of judgment, but well after the trial court had granted the motion for summary judgment. We exercise our discretion under California Rules of Court, rule 2(c), to treat the notice as timely.

DISCUSSION

I.

*Liability Based on "Retained Control"*

■ This case presents another variation on the recurring question of the scope of liability of the hirer of an independent contractor for injuries suffered by employees of the contractor during the performance of the contracted . work. The question is whether CSB, the "hirer" for present purposes, can be liable for injury to plaintiff based solely upon its failure to exercise the power to compel the contractor, PBE, to adopt certain safety measures that plaintiff contends would have prevented his injuries.

■ The general rule at common law is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." (Rest.2d Torts, § 409.) However, courts have "created so many exceptions to this general rule of nonliability that ' " 'the rule is now primarily important as a preamble to the catalog of its exceptions.' " ' [Citations.]" (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*).) Plaintiff relies on the exception set forth at section 414 of the Restatement Second of Torts (section 414), which is triggered where the hirer retains control over the work.[2]

According to the drafters of the Restatement, the control contemplated by this rule may consist of "the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject [the hirer] to liability under the principles of Agency, but he may be liable under the rule stated in [section 414] unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." (§ 414, com. a, p. 387.) The rule of section 414 is typically applicable, the Restatement continues, "when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should

---

[2]"Negligence in Exercising Control Retained by Employer [¶] One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (§ 414.)

know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so." (§ 414, com. b, pp. 387-388.)

Here the evidence was sufficient to at least raise a triable issue of fact as to whether CSB retained sufficient control to trigger section 414. CSB employed a site superintendent, McDonald, who testified that he considered himself empowered to "eliminate or abate safety hazards created by or otherwise resulting from performance of the work, whether created by or resulting from it or one of its subcontractors." Thus if he saw an unsafe condition, he "had a right to do whatever [he thought was] appropriate." In the event of a disagreement over safety procedures, CSB could suspend work while discussing the matter with the subcontractor. In resolving such a situation, CSB "would have the final say." Mr. McDonald agreed that "[i]f a subcontractor was working without adequate fall protection and [he] felt that fall protection was required, [he] would . . . tell them that they needed fall protection" and "would . . . stop the work until they had good fall protection." He agreed that "[o]ne of the jobs of the general contractor is to have an attitude of safety comes first, and if you see an unsafe condition, you tell the subcontractor to alleviate it." That was the way the job in question was run.

We have no doubt that this evidence would be sufficient to preclude summary judgment if the underlying claim against CSB rested on PBE's creation of a hazard that injured a stranger to the construction work, such as a neighbor, a bypasser, or perhaps a person lawfully on the premises for another purpose. In such a case CSB would fall squarely within the scope of the cited exception, so as to be subject to liability, even though the injuries might have been more immediately caused by the negligence of a subcontractor. ▮ The question here, however, is whether such liability can be extended in favor of an injured employee of the subcontractor—one who has received compensation under the workers' compensation law, thereby clothing his own employer, the more immediate tortfeasor, with immunity from further liability. Given the holdings and rationales of recent California Supreme Court cases, we must answer this question in the negative.

In *Privette, supra,* 5 Cal.4th 689, the employee of a roofing contractor brought an action against the owner of an apartment building who had hired the plaintiff's employer to repair the building's roof. The plaintiff contended

that the owner was liable under the doctrine of peculiar risk for injuries the plaintiff sustained while transferring hot tar. The court held that when the injured employee of an independent contractor has recovered a workers' compensation award from the contractor, the hirer of the contractor cannot be held liable under the peculiar risk doctrine. (*Id.* at p. 694.) The original purpose of that doctrine, the court observed, was to ensure that one who initiated activities posing a special hazard to third parties could not evade liability by hiring a contractor who might lack the wherewithal to pay damages for injuries resulting from the hazard. In such a situation, the court continued, "[i]t was believed that as between two parties innocent of any personal wrongdoing—the person who contracted for the work and the hapless victim of the contractor's negligence—the risk of loss occasioned by the contracted work was more fairly allocated to the person for whose benefit the job was undertaken. [Citation.] Also, by spreading the risk of loss to the person who primarily benefited from the hired work, the courts sought to promote workplace safety, a concern of great significance to the public." (*Ibid.*) The potentially harsh effect of the doctrine was ameliorated, the court noted, by the hirer's right to seek indemnity from the contractor. (*Ibid.*)

The court then observed that these rationales lose most or all of their force when the claimant is injured while employed by the contractor to perform the contracted-for work. Such a claimant is "automatically entitled to recover benefits" under the workers' compensation laws, which serve essentially the same purposes as the peculiar risk doctrine. (*Privette, supra,* 5 Cal.4th at pp. 696, 697, 701; see *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399].) Therefore the imposition of what amounts to vicarious liability on the hirer "advances no societal interest that is not already served by the workers' compensation system." (*Privette, supra,* at p. 692.) Moreover the hirer cannot obtain equitable indemnity from the contractor, because the contractor's payment of workers' compensation bars all liability in tort for on-the-job injuries to its own employees. (*Id.* at pp. 698, 701-702; see Lab. Code, § 3864.) This immunity from liability produces "the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury." (*Privette, supra,* at p. 698.) Considering that the purposes of the doctrine are duplicated by the system of workers' compensation, of which the injured plaintiff has presumably taken full advantage, the notion that the doctrine should extend to employees of the contractor "does not withstand scrutiny." (*Id.* at pp. 701-702, overruling *Woolen v. Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708].)

In *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), the court reaffirmed and illuminated its reasoning in *Privette,* which it summarized as follows: "Because the

Workers' Compensation Act (Lab. Code, § 3200 et seq.) shields an independent contractor from tort liability to its employees, applying the peculiar risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury. (5 Cal.4th at pp. 698-700.) As we concluded: '[T]he property owner should not have to pay for injuries caused by the contractor's negligent performance of the work when workers' compensation statutes already cover those injuries.' (*Id.* at p. 699.)" (*Toland, supra,* at p. 256.) The court rejected an argument that *Privette* only applies to claims brought under section 416 of the Restatement, which subjects the hirer to liability "for physical harm caused . . . by *the failure of the contractor* to exercise reasonable care." (Rest.2d Torts, § 416, italics added.) The court held, with one justice dissenting, that the *Privette* rationale likewise precludes liability under section 413 of the Restatement, which makes the hirer liable for his or her own failure to require necessary precautions in the contract, or to otherwise ensure that precautions are undertaken. Again describing its reasoning in *Privette,* the court wrote, "Because the Workers' Compensation Act . . . shields an independent contractor from tort liability to its employees, *applying the peculiar risk doctrine to the independent contractor's employees would illogically and unfairly subject the hiring person, who did nothing to create the risk that caused the injury, to greater liability than that faced by the independent contractor whose negligence caused the employee's injury.* (5 Cal.4th at pp. 698-700.) As we concluded: '[T]he property owner should not have to pay for injuries *caused by the contractor's negligent performance* of the work *when workers' compensation statutes already cover those injuries.*' (*Id.* at p. 699.)" (*Toland, supra,* 18 Cal.4th at p. 256, italics added.)

The court in *Toland* expressly reserved the question whether this reasoning would apply to claims brought under section 414. (*Toland, supra,* 18 Cal.4th at p. 264, fn. 2.) However, both it and *Privette* relied on portions of a tentative draft of the Restatement indicating that the entire chapter of the Restatement at issue there (and here) has limited application, if any, to employees of a hired contractor. As the court wrote in *Toland,* "*Privette* relied in part on the reasoning expressed in a tentative draft to the Restatement Second of Torts that workplace injuries are covered by workers' compensation insurance, 'the cost of which is "included by the contractor in his contract price" and "ultimately . . . borne by the defendant who hires him." ' (*Privette, supra,* 5 Cal.4th at p. 699, quoting Rest.2d Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note, pp. 17-18.) The tentative draft also stated that 'when the Sections in this Chapter speak of liability to "another," or "others," or to "third persons," it is to be understood that *the*

*employees of the contractor, as well as those of the defendant himself, are not included.'* (Rest.2d Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note, p. 18, italics added.)" (*Toland, supra,* 18 Cal.4th at pp. 266-267, some italics added.)

We are persuaded that the holdings of *Privette* and *Toland* should also apply to employees' claims under section 414 at least where, as here, (1) the sole factual basis for the claim is that the hirer failed to exercise a general supervisory power to require the contractor to correct an unsafe procedure or condition of the contractor's own making, and (2) there is no evidence that the hirer's conduct contributed in any way to the contractor's negligent performance by, e.g., inducing injurious action or inaction through actual direction, reliance on the hirer, or otherwise. The fairness rationale at the core of *Privette* and *Toland* applies equally to preclude imposition of liability on a hirer for mere failure to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, where such liability would exceed that imposed on the injured plaintiff's immediate employer, who created the hazard.

We find support for this conclusion in *Zamudio v. City and County of San Francisco* (1999) 70 Cal.App.4th 445 [82 Cal.Rptr.2d 664] (*Zamudio*), where Division Five of this court rejected an attempt to fix liability on a general contractor on a theory, among others, that it had negligently exercised control retained by it under its contracts with the property owner and plaintiff's employer, a concrete subcontractor. The court declined to reach the issue whether section 414 involved a form of "direct" liability to which a hirer remained subject after *Privette* and *Toland.* (*Zamudio, supra,* at p. 452.) Instead it affirmed summary judgment against the plaintiff because the facts were insufficient to establish a duty under that section running toward the plaintiff. The court noted that there was no evidence of "any *affirmative act* by [the owner or contractor] which contributed to appellant's fall" (*ibid,.* italics in original), or of "direct management over the means and methods of the independent contractor's work" (*id.* at p. 453), or of "the provision of the equipment which caused the injury" (*ibid.*). Evidence that the defendants "m[ight] have participated in discussions about the general subject of workplace safety" did not support an inference that they "undertook responsibility for appellant's safety at the jobsite, or that there was any nexus between these general discussions and the failure to secure the plank from which he fell." (*Ibid.*) Nor was the imposition of liability warranted by "the right to inspect premises for unsafe structural conditions," "efforts undertaken to increase public safety," "inspections and generalized exhortations in favor of a safe workplace," or "the presence of a provision in the main contract delegating [the owner's] safety responsibilities to [the defendant]." (*Ibid.*)

Our reasoning is also consistent with the result, though it may be somewhat at odds with some of the broader dicta, in *Grahn v. Tosco* (1997) 58

Cal.App.4th 1373 [68 Cal.Rptr.2d 806] (*Grahn*). In that case Division Two of this court discussed at length its reasons for rejecting a landowner's argument that, in light of *Privette*, the hirer of an independent contractor was *categorically exempt* from liability to the contractor's employees *regardless of the nature or extent of the contractor's own fault.* Much of the court's discussion was an attempt to illuminate the holding in the then new *Privette* decision. As noted in *Zamudio, supra,* 70 Cal.App.4th at page 451, our colleagues in *Grahn* did not have the benefit of the Supreme Court's further analysis of these issues in *Toland.* That analysis appears inconsistent with *Grahn* to the extent that the latter limited the rule of *Privette* to "cases of peculiar risk seeking to impose liability on hirers of independent contractors vicariously under the rubric of a nondelegable duty." (*Grahn, supra,* 58 Cal.App.4th at p. 1389.)

On the other hand, the *Grahn* court's analysis of the theory now before us is largely if not entirely consistent with our own approach. First we note that the specific issue we address was not before the court, because the defendant did not "contest the legal efficacy of [the plaintiff's] theory of liability premised on allegations that [the hirer] retained control over the details by which the insulation work was performed by [the contractor]." (*Grahn, supra,* 58 Cal.App.4th at p. 1393.) Instead it challenged the sufficiency of the evidence and the accuracy of the jury instructions concerning that theory. (*Ibid.*) The court in *Grahn* found the evidence sufficient to support imposition of liability under section 414. (*Grahn, supra,* at pp. 1394-1395.) On the evidence there we would have done likewise: Comparably to CSB here, the defendant had "retained an active role in site safety, including reserving the authority to stop [the] work in order to effectuate asbestos abatement at the jobsites." (58 Cal.App.4th at p. 1394.) But the evidence went considerably further, supporting findings that the hirer also "retained *responsibility* for conducting industrial/hygiene *monitoring.*" Most tellingly, the hirer "issued permits" to the contractor that "list[ed] the safety equipment [the hirer] required [the contractor's] workers to wear," and these permits "never carried any asbestos warnings or restrictions, or required that the workers wear respirators." (*Ibid.*, italics added.)

The evidence in *Grahn* thus supported an inference that the hirer *affirmatively contributed* to the safety hazard by assuming "responsibility" for the specific hazard at issue and dictating (inadequate) safety measures to deal with it. The hirer's pervasive *exercise* of control over safety practices and equipment might have been found to have induced reliance by the contractor and its employees making the contractor's failure to warn a contributory factor in the plaintiff's injuries. In both respects the contractor's conduct consisted of more than a mere failure to exercise a retained supervisory

power; it was an affirmative exercise of power in a negligent manner. Such evidence would continue to support the imposition of liability under the rule we adopt today.

We also note that while the analysis in *Grahn* assumes the applicability of section 414 to claims by an injured contractor's employee against the contractor's hirer, much of its discussion supports our conclusion that mere inaction by the hirer cannot establish such a claim where the immediate cause of the injury is the contractor's own failure to take appropriate precautions. The court held that the jury was erroneously instructed with respect both to liability under section 414 and to liability as a landowner for dangerous conditions of its property. The error lay in the instructions' failure to focus "on the control by the hirer of the methods or details of the work and not simply the hirer's inherent right otherwise to control the premises." (*Grahn, supra,* 58 Cal.App.4th at p. 1396.) While this reasoning parallels ours, and springs from similar concerns over the scope of liability, it differs in one critical respect in that it would also limit the hirer's liability to persons outside the relationships of hirer-contractor and contractor-employee. We thus draw support from the underlying concern, while departing somewhat from the ramifications found by the court.

The distinction is better illustrated by other cases that have attempted to rationalize limitations on the liability of hirers by restricting the kind of "control" held to trigger liability under section 414. For example, in *Candelaria v. BC Gen.* (1999) 236 Mich.App. 67 [600 N.W.2d 348, 354], the hirer was held not liable, in part because "the evidence did not permit a finding that the control retained by BC had any effect on the manner or environment in which the work was performed." While we agree that such a failure of evidence should preclude liability to an employee of a subcontractor, we are less certain that it should preclude recovery by a stranger to the work such as an unrelated invitee, neighbor, or bypasser. The question is when should a hirer's *failure to exercise control* expose it to liability for damages. The answer is at least arguably different depending on whether the plaintiff is an employee of the primary tortfeasor, thus bringing the case within the rationale of *Privette* and *Toland*, or is a complete stranger to that relationship. In the latter case, the injured person has no other certain remedy, the immediate employer is not immune from civil liability, and the hirer, if held liable, is presumptively entitled to equitable indemnity from the immediate employer. Holding both hirer and employer liable presumably provides both with a powerful incentive to act with due care towards neighbors, bypassers, and visitors to the site. Such strangers to the work appear to fall squarely within the original rationale for the "retained control" doctrine: they have no assured remedy from any other source; if the subcontractor is primarily responsible, the hirer is entitled to equitable indemnity; it

is fair to shift the burden of the injury from the innocent stranger to the beneficiary of the work; and the imposition of liability encourages the hirer to exercise the retained control so as to make the operation safe for third parties. Conversely, to unduly restrict the conception of qualifying "control" would risk depriving such persons of a remedy, while exempting a responsible beneficiary from a liability that is fairly and efficiently imposed on it.

In any event, for the reasons stated, we are satisfied that a general contractor owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the contractor did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff. Insofar as section 414 might permit the imposition of liability on a general contractor for mere failure to intervene in a subcontractor's working methods or procedures, without evidence that the general contractor affirmatively contributed to the employment of those methods or procedures, that section is inapplicable to claims by subcontractors' employees against the general contractor.

II.\*

*Liability for Violation of Occupational Safety Regulations*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

The judgment is affirmed.

Reardon, Acting P. J., and Woolard, J.,† concurred.

A petition for a rehearing was denied February 26, 2001, and the opinion was modified to read as printed above.

---

\*See footnote, *ante*, page 28.

†Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.