110 Cal.Rptr.2d 170 (2001)
91 Cal.App.4th 189
Teresa VILLAFANA et al., Plaintiffs and Appellants,
v.
CAMCO PACIFIC CONSTRUCTION COMPANY, INC., et al., Defendants and Respondents.
No. D037267.
Court of Appeal, Fourth District, Division One.
August 1, 2001.
Review Granted October 17, 2001.
*171 Aprahamian & Friend, Gerard L. Friend, Naris Khalatian and Margaret M. Kame, Los Angeles, for Plaintiffs and Appellants.
Murtaugh Miller Meyer & Nelson LLP, Lawrence A. Treglia, Geoffrey A. Graves, Irvine, and Daniel B. Boyle, Washington, DC, for Defendants and Respondents.
McINTYRE, J.
Decedent Jose Villafana, the employee of a subcontractor, was killed in a forklift accident at a gasoline station that was under construction. His widow, Teresa Villafana, and their four children (collectively the Villafanas) brought this wrongful death action against the general contractor, Cameo Pacific Construction Company, Inc. (Cameo), and its jobsite supervisor, Robert Martin. The Villafanas allege the defendants were negligent in requiring the subcontractor to unload gasoline dispensersthe large apparatuses from which gasoline is pumped150 feet from the island where they would be installed, requiring the subcontractor to transport them by forklift, and in not implementing safety precautions during their transportation.
The question we decide here is whether Cameo may be liable under a retained control theory because it had authority over jobsite safety issues and directed subcontractors and suppliers where to unload deliveries. We join the First District Court of Appeal, Division Four, in concluding that under the rationale of Privette v. Superior Court (1993) 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (Privette) and Toland v. Sunland Housing Group, Inc. (1998) 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504 (Toland), liability cannot be imposed under a retained control theory when "the general contractor's failure is not shown to have affirmatively contributed to the creation or persistence of the hazard causing the plaintiffs injuries." (Kinney v. CSB Construction, Inc. (2001) 87 Cal.App.4th 28, 30, 103 Cal.Rptr.2d 594 *172 (Kinney).) Because there is no evidence here that the defendants actually directed the subcontractor or otherwise contributed to its negligent performance, we affirm the summary judgment in their favor.

FACTUAL AND PROCEDURAL BACKGROUND
Villafana was employed by S.J. Weaver Contracting (S.J. Weaver), a subcontractor of Cameo, the general contractor on the remodel of a Unocal 76 gas station in Temecula, California. S.J. Weaver was responsible for providing material, labor and equipment for the installation of the fueling system and gasoline dispensers.
Camco's site supervisor, Martin, directed S.J. Weaver's owner, Steve Weaver, to unload the gasoline dispensers on a paved road 150 feet from the island where they were to be installed, because grading and other work was being performed in the island area. During transportation of the dispensers, Weaver instructed Villafana and another employee to walk alongside the forklift to watch for traffic and steady the dispensers. S.J. Weaver successfully moved three dispensers, but during the fourth trip Villafana was caught under a forklift tire and sustained mortal injuries. S.J. Weaver was cited for a violation of governmental safety rules.
The Villafanas sued Cameo and Martin for wrongful death. (The Villafanas also sued Union Oil Company of California (Union Oil), the owner of the station, but it is not involved in this appeal.) The defendants moved for summary judgment on the ground S.J. Weaver's negligence was the sole cause of the accident. The Villafanas countered that the defendants were liable because under its contract with Union Oil, Cameo retained control of worksite safety issues as well as where subcontractors and suppliers unloaded their deliveries. Specifically, Cameo "agreed to `comply with all applicable laws, rules, regulations, and ordinances, including but not limited to those relating to . . . occupational health and safety as well as [Union Oil's] Safety Program Requirements at the specific location involved'"; the "work was to be `entirely under [Camco's] supervision, direction and control'"; and Cameo was required "to take special precautions to eliminate or minimize risks `peculiar' to [its] work."
The evidence showed that before the accident, Martin observed S.J. Weaver's successful transportation of at least two of the dispensers to the islands by forklift. Cameo provided no services in connection with the transportation and did not direct S.J. Weaver on the mode of transportation. "It was S.J. Weaver's custom and practice to have workers on either side of the forklift to see where things were going," and Weaver alone directed Villafana to walk alongside the forklift. The court granted the defendants summary judgment.

DISCUSSION

I

Standard of Review
We review the ruling on a motion for summary judgment de novo. (Zavala v. Arce (1997) 58 Cal.App.4th 915, 925-926, 68 Cal.Rptr.2d 571.)
In Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 107 Cal.Rptr.2d 841, 24 P.3d 493, the Supreme Court clarified the parties' burdens on a summary judgment motion. "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of *173 fact to find the" underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . A defendant bears the burden of persuasion that `one or more elements of the `cause of action' in question `cannot be established,' or that `there is a complete defense' thereto." (Id at p. 850, 107 Cal. Rptr.2d 841, 24 P.3d 493, fns. omitted.) "A burden of persuasion . . . entails the `establishment]' through such evidence of a `requisite degree of belief.'" (Ibid.; Code Civ. Proc., § 473c, subd. (o)(2).)
"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A burden of production entails only the presentation of `evidence.'" (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at pp. 850-851, 107 Cal.Rptr.2d 841, 24 P.3d 493.)

II

Viability of Retained Control Theory After Privette and Toland

A
Generally, the hirer of an independent contractor is not liable to third parties for the negligence of the contractor or its employees. (Johnson v. Tosco Corp. (1991) 1 Cal.App.4th 123, 131, 1 Cal. Rptr.2d 747.) "Central to this rule of nonliability was the recognition that a person who hired an independent contractor had `"no right of control as to the mode of doing the work contracted for."'" (Privette, supra, 5 Cal.4th at p. 693, 21 Cal. Rptr.2d 72, 854 P.2d 721.) However, "[o]ver time, the courts have, for policy reasons, created so many exceptions to this general rule of nonliability that `"`the rule is now primarily important as a preamble to the catalog of its exceptions.'"'" (Ibid.)
An exception to the general rule of nonliability has been made when the hirer of an independent contractor retains control of the work and fails to exercise the control with reasonable care. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1009, p. 402; Johnson v. Tosco Corp., supra, 1 Cal.App.4th at pp. 138-139, 1 Cal.Rptr.2d 747.) This theory is set forth in section 414 of the Restatement Second of Torts (section references are to this publication except where otherwise specified): "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."
Comment a to section 414 explains: "If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to *174 prevent the work which he has ordered to be done from causing injury to others." (Italics added.)
In Toland, supra, 18 Cal.4th at page 264, footnote 2, 74 Cal.Rptr.2d 878, 955 P.2d 504, the Supreme Court expressly reserved the issue of whether its decision in Privette, supra, 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721 "would preclude an employee of an independent contractor from seeking tort recovery for workplace injuries under the theory of section 414 . . . that the general contractor or landowner `retained control' over the operative details of the hired work." This issue is currently pending before the court. (Camargo v. Tjaarda Dairy (2001) 25 Cal.4th 1235, 1245, fn. 2, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (Camargo), citing Hooker v. Department of Transportation, review granted Nov. 1, 2000, S091601.)
In Privette, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, the court held another exception to the general rule of nonliability, that of peculiar risk, is inapplicable in the context of workplace injuries. The peculiar risk doctrine was meant "to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries." (Id. at p. 694, 21 Cal.Rptr.2d 72, 854 P.2d 721.) The court explained that "[w]hen . . . the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (Id. at p. 702, 21 Cal.Rptr.2d 72, 854 P.2d 721.) In the employment situation, the application of the peculiar risk doctrine "produces the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury. . . ." (Id. at p. 698, 21 Cal.Rptr.2d 72, 854 P.2d 721.)
In Toland, supra, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, the court reaffirmed its holding in Privette and clarified that it applies to both sections 413 and 416, which set forth alternative theories of peculiar risk liability. "Because section 413 rests the liability of the hiring person on his or her omission to provide for special precautions in the contract [with the independent contractor] or in some other manner, it is sometimes described as a rule of `direct liability.'" (Toland, at p. 259, 74 Cal.Rptr.2d 878, 955 P.2d 504.) "Because the hiring person's liability under section 416 . . . flows from the independent contractor's negligent failure to take special precautions in performing the inherently dangerous work, as required by `the contract or otherwise,' the hiring person's liability is often referred to as `vicarious liability.'" (Id. at p. 260, 74 Cal. Rptr.2d 878, 955 P.2d 504.)
The court noted that under either a "`direct'" or "`vicarious'" liability theory, "the hiring person is subject to liability for injuries to others resulting from the contractor's failure to take safety precautions while performing the inherently dangerous work." (Toland, supra, 18 Cal.4th at pp. 264, 74 Cal.Rptr.2d 878, 955 P.2d 504.) It held that under either theory "it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (Id. at p. 267, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
*175 Kinney, supra, 87 Cal.App.4th 28, 103 Cal.Rptr.2d 594, was decided while this appeal was pending. In Kinney, the court concluded that "the holdings of Privette and Toland should also apply to employees' claims under section 414 at least where, as here, (1) the sole factual basis for the claim is that the hirer failed to exercise a general supervisory power to require the contractor to correct an unsafe procedure or condition of the contractor's own making, and (2) there is no evidence that the hirer's conduct contributed in any way to the contractor's negligent performance by, e.g., inducing injurious action or inaction through actual direction, reliance on the hirer, or otherwise." (Id. at p. 36, 103 Cal.Rptr.2d 594.) The court explained that the "fairness rationale at the core of Privette and Toland applies equally to preclude imposition of liability on a hirer for mere failure to exercise a general supervisory power to prevent the creation or continuation of a hazardous practice, where such liability would exceed that imposed on the injured plaintiffs immediate employer, who created the hazard." (Ibid.)
The Kinney court noted that in Privette and Toland, the court relied on a tentative draft of the Restatement Second of Torts "indicating that the entire chapter of the Restatement at issue there [in which section 414 also appears] has limited application, if any, to employees of a hired contractor." (Kinney, supra, 87 Cal.App.4th at p. 35, 103 Cal.Rptr.2d 594, citing Rest.2d Torts (Tent. Draft No. 7, Apr. 16, 1962) ch. 15, special note, pp. 17-18.) The tentative draft also stated that "`"when the Sections in this Chapter speak of liability to `another,' or `others,' or to `third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included." [Citation.]'" (Kinney, at pp. 35-36, 103 Cal.Rptr.2d 594.)
In Kinney the court also found support in Zamudio v. City and County of San Francisco (1999) 70 Cal.App.4th 445, 82 Cal.Rptr.2d 664. In Zamudio, the employee of a subcontractor hired to perform concrete work fell from a plank that rested between two portable forms. He sued the property owner and its construction manager, alleging they were liable under section 414 because they "failed to use reasonable care when they retained and exercised control over the concrete work." (Zamudio, at p. 452, 82 Cal.Rptr.2d 664.) The Zamudio court affirmed summary judgment for the defendants on the ground that even if section 414 involved a form of "`direct'" liability that survived Privette and Toland, as the plaintiff contended, there was "no evidence of any affirmative act by [the defendants] which contributed to [the plaintiffs] fall." (Zamudio, at p. 452, 82 Cal.Rptr.2d 664.) The defendants were not in the vicinity when the accident occurred, and only the subcontractor's employees supervised or directed the placement of the apparatus from which the plaintiff fell. "In the absence of direct management over the means and methods of the independent contractor's work or the provision of the equipment which caused the injury, no legal duty is created" under section 414. (Zamudio, at p. 453, 82 Cal.Rptr.2d 664.)
At oral argument, the defendants suggested that in light of the Supreme Court's direction in Privette and Toland the employee of an independent contractor should have no recourse under a retained control theory even when the hirer's affirmative negligence is the direct cause of the injury. The rationale of Privette and Toland, however, is that it is unfair to hold a hirer liable when it did nothing to create the risk that caused the injury. (Camargo, supra, 25 Cal.4th 1239-1240, 108 Cal. Rptr.2d 617, 25 P.3d 1096.) Again, in Privette, *176 supra, 5 Cal.4th at page 698, 21 Cal.Rptr.2d 72, 854 P.2d 721, the court held the application of the peculiar risk doctrine to a hirer "produces the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury." (Italics added.)
In Toland the court explained that although peculiar risk liability under section 413 is deemed "`direct,'" it is "in essence `vicarious' or `derivative' in the sense that it derives from the `act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (Toland, supra, 18 Cal.4th at p. 265, 74 Cal.Rptr.2d 878, 955 P.2d 504.) It does not appear that the rationale of Privette and Toland would bar forms of direct liability that are not derivative of the independent contractor's negligence, but instead are based on the hirer's own affirmative conduct. (But see Camargo, supra, 25 Cal.4th at pp. 1245-1246, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (conc. opn. of Werdegar, J.).) In any event, the issue is academic under the facts here.
We agree with the Kinney court that section 414 does not permit the imposition of liability on a general contractor for its "mere failure to exercise power to compel the subcontractor to adopt safer procedures." (Kinney, supra, 87 Cal.App.4th at p. 39, 103 Cal.Rptr.2d 594.) We glean no practical distinction between theories of liability based on the general contractor's failure to provide special precautions to guard against risks associated with inherently dangerous work (sections 413 and 416) and the failure to exercise the general supervisory power to require a subcontractor to correct unsafe work methods (section 414). Under either scenario it is "illogical and unfair" to attribute greater fault to the general contractor than to the subcontractor whose negligence caused the employee's injury or death, particularly since its liability is circumscribed by the Workers' Compensation Act. (Toland, supra, 18 Cal.4th at p. 270, 74 Cal.Rptr.2d 878, 955 P.2d 504.) Indeed, in Toland the court explained that the hirer of an independent contractor "has no obligation to specify the precautions an independent hired contractor should take for the safety of the contractor's employees. Absent an obligation, there can be no liability in tort." (Id. at p. 267, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
Further, we are unpersuaded by the Villafanas' contention that they raised a triable issue of fact regarding whether the defendants' affirmative conduct caused or contributed to S.J. Weaver's negligent performance. (Kinney, supra, 87 Cal.App.4th at p. 36, 103 Cal.Rptr.2d 594.) They did not establish any nexus between the fatal accident and Martin's insistence that S.J. Weaver unload the gasoline dispensers 150 feet from the islands. The peril was not created by distance, but by S.J. Weaver's unsafe transportation methods. As the Villafanas' expert declared, "[i]f a dispenser was to be transported by forklift for any distance, the dispenser had to be stabilized by using tag-lines which secured to the load could have been held and pulled for control . . . by workers, at a good distance from the forklift, to prevent the worker from getting too close to the forklift. No tag lines were used during the transportation process. It was negligent to allow the workers to transport the dispensers without tag lines" and "to allow the workers to steady the dispensers by their hands."

B
The Villafanas attempt to distinguish Privette, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, and Toland, supra, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, on the ground that the plaintiffs *177 there were injured employees, while here they are the heirs of an employee who was killed on the job. They contend that the Workers' Compensation Act should not provide the exclusive remedy to the heirs of a deceased employee, because death benefits are limited to a fixed amount per dependent heir (Lab.Code, § 4702). They assert that the disallowance of a tort action against the defendants will preclude them from fully recovering their economic and noneconomic damages, and will violate the equal protection rights of two of the deceased's children who are nondependent heirs ineligible for death benefits.
The Villafanas cite no authority to support their contentions, and thus we may treat them as waived. (Interinsurance Exchange v. Collins (1994) 30 Cal.App.4th 1445, 1448, 37 Cal.Rptr.2d 126.) In any event, there is no merit to the notion that the heirs of a deceased employee have tort claims against third parties that are unavailable to an injured employee because of the exclusivity of the Workers' Compensation Act. The exclusivity provision applies equally to claims arising from injury or death of an employee. (Lab.Code, § 3601, subd. (a).) Additionally, it is established that Labor Code section 3601 "does not exceed the constitutional authority given by the enabling provision . . ., is a valid exercise of state police power, and does not deny either equal protection of the laws or due process of law." (2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 25, p. 579.) We also note that in Camargo, supra, 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096, the plaintiffs were the heirs of an employee killed on the job.
III
Negligent Hiring
The Villafanas also relied on the negligent hiring exception to the general rule of nonliability. Under section 411, "[a]n employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor [¶] (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or [¶] (b) to perform any duty which the employer owes to third persons."
Shortly before oral argument here, the Supreme Court issued its decision in Camargo, supra, 25 Cal.4th 1235, 108 Cal. Rptr.2d 617, 25 P.3d 1096. The court held that under the rationale of Privette and Toland, "an employee of a contractor should be barred from seeking recovery from the hirer under the theory of negligent hiring set forth in section 411." (Camargo, at p. 1244, 108 Cal.Rptr.2d 617, 25 P.3d 1096.) Accordingly, the Villafanas concede their negligent hiring claim is not viable.
DISPOSITION
The judgment is affirmed. Costs of appeal are awarded to the respondents.
NARES, Acting P.J., and HALLER, J., concur.