2 Cal.Rptr.3d 87 (2003)
110 Cal.App.4th 826
Ray KINSMAN et al., Plaintiffs and Respondents,
v.
UNOCAL CORPORATION, Defendant and Appellant.
Nos. A093424, A093649.
Court of Appeal, First District, Division Three.
July 18, 2003.
Rehearing Denied August 12, 2003.
Review Granted October 29, 2003.
*89 Michael T. McCall, Robert M. Channel, Cyrian B. Tabuena, Allan W. Ruggles; Walsworth, Franklin, Bevins & McCall, for Appellant.
Daniel U. Smith, Ted W. Pelletier, Harry F. Wartnick, Charles C. Kelly II; *90 Wartnick, Chaber, Harowitz & Tigerman, for Respondent.
*88 PARRILLI, J.
This case presents an unsettled question under Privette v. Superior Court (1993) 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (Privette) and its progeny: Under what circumstances, if any, may a premises owner be held liable for injuries sustained by the employee of an independent contractor due to a dangerous condition on the owner's property? Based on the policies expressed in Privette and the Supreme Court's application of those policies in recent cases, we conclude a premises owner has no liability to an independent contractor's employee for a dangerous condition a contractor has created on the property unless the dangerous condition was within the property owner's control and the owner exercised this control in a manner that affirmatively contributed to the employee's injury. Because the jury instructions in this case did not reflect these limitations on the premises owner's liability, we reverse for a new trial.[1]

BACKGROUND
During the 1950's, plaintiff Ray Kinsman worked on many occasions as a carpenter at defendant Unocal's refinery in Wilmington, California. Kinsman was employed by Burke & Reynolds, an independent contractor Unocal hired to perform scaffolding work during periods of "shutdown" and repair at the refinery. Kinsman built and dismantled scaffolding used by other trades, including pipefitters and insulators. This work exposed him to airborne asbestos, which was produced by other trades particularly insulatorsduring their application and removal of asbestos-containing insulation from pipes and machinery. Though Kinsman did not work directly with such insulation, the evidence showed he was exposed to asbestos dust in three ways: (1) When insulators worked on scaffolding, asbestos-containing debris accumulated on the planks. Kinsman was exposed to this asbestos material when he cleared debris from the planks in dismantling used scaffolding. (2) Some asbestos dust was produced from Kinsman's work "tying in" scaffolding to insulated pipes or equipment. (3) Asbestos fibers released by the work of other trades "float[ed] in the air," exposing Kinsman as he worked nearby. Kinsman did not wear a mask or respirator at Unocal.
Years later, Kinsman developed mesothelioma, an asbestos-induced malignant cancer of the lining of the lungs. He sued scores of product manufacturers and distributors, as well as several premises owners. Ultimately, the case proceeded to a jury trial against Unocal, a "premises defendant," alone. The parties stipulated that Kinsman was exposed to asbestos during his work at Unocal. In addition, following uncontroverted expert testimony that labeled this exposure a "substantial factor" contributing to Kinsman's development of mesothelioma, the trial court granted a directed verdict for Kinsman on the issue of causation. Because the parties also stipulated Kinsman bore no contributory fault, the only disputed issues before the jury concerned whether, and to what extent, Unocal was negligent, whether Kinsman's wife suffered a loss of consortium, and the amount of damages suffered by the Kinsmans.
Kinsman claimed Unocal was negligent because, in the 1950's, the company knew *91 or should have known that asbestos was hazardous, but it failed to warn Kinsman or protect him from the hazard. To show Unocal's knowledge, Kinsman relied on several published articles in the 1930's and 1940's linking asbestos with asbestosis, lung cancer and mesothelioma, and reports distributed by other oil companies and oil industry associations in the 1940's and 1950's that described the risks associated with asbestos exposure. Given Unocal's access to these published articles and reports and its membership in oil industry associations, Kinsman's expert testified that, in the 1950's, oil companies such as Unocal knew or should have known asbestos posed a risk of harm to refinery workers. Despite this knowledge, Unocal never warned Kinsman about the danger of asbestos exposure and did not provide him with a mask to wear for protection. Kinsman testified, however, that he would have asked his employer, Burke & Reynolds, for a mask if he wanted one. He also testified that Burke & Reynolds never discussed the health risks of asbestos at its safety meetings.
Kinsman submitted his case on two theories of Unocal's liability: (1) negligence "in the use, maintenance or management of the areas where Ray Kinsman worked," and (2) negligence in the exercise of retained control over "the methods of the work or the manner of the work performed by ... Ray Kinsman." The jury found Unocal did not retain control over the methods or manner of Kinsman's work, and thus did not reach the question of negligence under the "retained control" theory; however, the jury concluded Unocal was negligent in the "use, maintenance or management" of the refinery. It assigned Unocal 15 percent of the fault in causing Kinsman's mesothelioma, with the remaining 85 percent of fault attributable to "all others," and awarded the plaintiffs over $3 million in compensatory damages.
Unocal separately appealed from the judgment on the jury verdict and the court's denial of its motion for judgment notwithstanding the verdict. We consolidated the appeals for briefing and oral argument.

DISCUSSION

I. Premises Owner's Liability to Employees of Independent Contractor
Unocal contends the BAJI 8.01 instruction read to the jury in connection with the negligent maintenance of property claim did not properly define the duty of care owed by Unocal, a premises owner, to Kinsman, an independent contractor's employee. Specifically, Unocal asserts the instruction failed to reflect the policybased limitations on liability established in the line of cases under Privette, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721. We begin our discussion with a brief review of these cases.

A. Relevant Supreme Court Precedents
The general rule at common law is that the hirer[2] of an independent contractor is not liable to third parties for physical injuries caused by the contractor's negligence *92 in performing the work. (Rest.2d Torts, § 409; Privette, supra, 5 Cal.4th at p. 693, 21 Cal.Rptr.2d 72, 854 P.2d 721.) However, "[o]ver time, the courts have, for policy reasons, created so many exceptions to this general rule of nonliability that `"`the rule is now primarily important as a preamble to the catalog of its exceptions.'"' [Citations.]" (Privette, supra, at p. 693, 21 Cal.Rptr.2d 72, 854 P.2d 721.)
In Privette, the Supreme Court addressed the exception that allows liability to be extended to a hirer when the contracted work poses a "peculiar risk" of injury to others. The peculiar risk exception evolved as a way "to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries. [Citations.]" (Privette, supra, 5 Cal.4th at p. 694, 21 Cal.Rptr.2d 72, 854 P.2d 721.) California was one of the minority of jurisdictions that expanded this doctrine beyond third parties and allowed the contractor's employees to seek recovery from the hirer for injuries caused by the contractor's negligence. (Id. at p. 696, 21 Cal.Rptr.2d 72, 854 P.2d 721 [discussing Woolen v. Aerojet General Corp. (1962) 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708].) However, the Privette court determined this extension of peculiar risk liability to hirers did not "withstand scrutiny" when considered in light of the workers' compensation scheme. (Privette, supra, at pp. 701-702, 21 Cal.Rptr.2d 72, 854 P.2d 721.) Whereas an innocent bystander might have no other source of compensation for injuries resulting from a contractor's negligence, the workers' compensation system guarantees the contractor's employee a recovery for workplace injuries, regardless of the solvency of the contractor. (Id. at p. 701, 21 Cal.Rptr.2d 72, 854 P.2d 721; Toland, supra, 18 Cal.4th at p. 261, 74 Cal.Rptr.2d 878, 955 P.2d 504.) And, while extension of liability to the hirer is generally justified by the hirer's right to equitable indemnity from the contractor, such indemnity is not available for compensation paid to a contractor's employees. "[T]he exclusivity provisions of the workers' compensation scheme shield the negligent contractor from an action seeking equitable indemnity. ([Lab.Code,] § 3864.)" (Privette, supra, at p. 701, 21 Cal.Rptr.2d 72, 854 P.2d 721.) Privette concluded: "When, as here, the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to workers' compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (Id. at p. 702, 21 Cal.Rptr.2d 72, 854 P.2d 721.)
In Toland, supra, 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, the court reaffirmed Privette and explained the scope of its holding. Insofar as it is relevant here, the doctrine of peculiar risk is described in sections 413 and 416 of the Restatement Second of Torts (hereafter Restatement).[3] Under section 413, one who hires a contractor to do inherently dangerous work but fails to require "in the contract" or "in some other manner" that the contractor take special precautions can be held liable if the contractor's negligence causes injuries to others. "Because section 413 rests the liability of the hiring person on his or her omission to provide *93 for special precautions in the contract or in some other manner, it is sometimes described as a rule of `direct liability.' [Citations.]" (Id. at p. 259, 74 Cal.Rptr.2d 878, 955 P.2d 504.) Under section 416, a hirer who has provided for special precautions may nevertheless be held liable when the contractor's failure to take such precautions causes injury to others. "Because the hiring person's liability under section 416 ... flows from the independent contractor's negligent failure to take special precautions in performing the inherently dangerous work, as required by `the contract or otherwise,' the hiring person's liability is often referred to as `vicarious liability.' [Citations.]" (Id. at p. 260, 74 Cal.Rptr .2d 878, 955 P.2d 504.)
The court in Toland rejected the plaintiffs attempt to limit the Privette holding to claims of "vicarious," versus "direct," liability: "[U]nder both sections 413 and 416, the hiring person's liability is cast in the form of the hiring person's breach of a duty to see to it that special precautions are taken to prevent injuries to others; in that sense, the liability is `direct.' Yet, peculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence `vicarious' or `derivative' in the sense that it derives from the `act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (Toland, supra, 18 Cal.4th at p. 265, 74 Cal.Rptr.2d 878, 955 P.2d 504.) Instead, the court returned to the policy rationale underlying Privette and concluded it applied equally whether the hirer's liability was premised on section 413 or 416: "As we concluded in Privette, supra, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, it is illogical and unfair that a landowner or other person who hires an independent contractor should have greater liability for the independent contractor's negligence towards the contractor's employees than the independent contractor whose liability is limited to providing workers' compensation coverage. Imposing on the hiring person a liability greater than that incurred by the independent contractor (the party with the greatest and most direct fault) is equally unfair and illogical whether the hiring person's liability is premised on the theory of section 413 ... or the theory of section 416...." (Toland, supra, at p. 270, 74 Cal.Rptr.2d 878, 955 P.2d 504.)
In Camargo v. Tjaarda Dairy (2001) 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (Camargo), the high court extended the Privette rationale to the tort of negligent hiring. (§ 411 [subjecting hirer of contractor to liability for injuries suffered by "third persons" due to contractor's negligence].) Once again, the court stressed the irrelevance of a distinction between "direct" versus "vicarious" liability in these cases, stating, "the rationale of our decision in Privette extends to cases where the hirer is directly negligent in the sense of having failed to take precautions against the peculiar risks involved in the work entrusted to the contractor." (Camargo, supra, at p. 1243, 108 Cal.Rptr.2d 617, 25 P.3d 1096.) Although a party sued for negligent hiring "is, in a sense, being taxed with his own negligence under a theory of direct liability" (id. at p. 1244, 108 Cal. Rptr.2d 617, 25 P.3d 1096), under section 411 "the liability of the hirer is `in essence "vicarious" or "derivative" in the sense that it derives from the "act or omission" of the hired contractor, because it is the hired contractor who caused the injury by failing to use reasonable care in performing the work.' (Toland, supra, 18 Cal.4th at p. 265 [74 Cal.Rptr.2d 878, 955 P.2d 504].)" (Camargo, supra, at p. 1244, 108 Cal.Rptr.2d 617, 25 P.3d 1096.) Thus, the *94 court concluded, it would be just as unfair to impose liability on the hiring party in a negligent hiring case as in a peculiar risk case. (Ibid.)
In the recent case Hooker v. Department of Transportation (2002) 27 Cal.4th 198, 115 Cal.Rptr.2d 853, 38 P.3d 1081 (Hooker), the Supreme Court considered whether an independent contractor's employee may sue the hirer for negligent exercise of retained control, as that tort is described in section 414 of the Restatement. The court emphasized again, "the conclusion that a hirer's liability can be characterized as direct does not end the inquiry into whether the hirer should be held liable for injuries to a contractor's employees...." (Hooker, supra, at p. 210, 115 Cal.Rptr.2d 853, 38 P.3d 1081.) Instead, the court returned to the fairness principles underlying Privette to cast a rule of limited liability: "[B]ecause the liability of the contractor, the person primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage, it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the ability to exercise control over safety at the worksite. In fairness, ... the imposition of tort liability on a hirer should depend on whether the hirer exercised the control that was retained in a manner that affirmatively contributed to the injury of the contractor's employee." (Id. at p. 210, 115 Cal.Rptr.2d 853, 38 P.3d 1081.) The requirement of an affirmative contribution makes imposing liability on the hirer consistent with Privette and its progeny, the court reasoned, "because the liability of the hirer in such a case is not `"in essence Vicarious' or `derivative' in the sense that it derives from the `act or omission' of the hired contractor."' [Citations.] To the contrary, the liability of the hirer in such a case is direct in a much stronger sense of that term." (Id. at p. 212, 115 Cal.Rptr.2d 853, 38 P.3d 1081.)
Finally, in McKown v. Wal-Mart Stores, Inc. (2002) 27 Cal.4th 219, 115 Cal.Rptr.2d 868, 38 P.3d 1094 (McKown), the Supreme Court extended the holding of Hooker to the tort of negligent provision of unsafe equipment. When a hirer negligently furnishes unsafe equipment to the contractor, and in doing so affirmatively contributes to injuries suffered by the contractor's employee, the court held the hirer may be held liable "for the consequences of [its] own negligence." (Id. at p. 225, 115 Cal. Rptr.2d 868, 38 P.3d 1094.)
Thus, the Supreme Court has adhered to the policies outlined in Privette that limit a hirer's vicarious or derivative liability to a contractor's employee; however, the court has also made it clear that these policies are not violated when a hirer is held liable to such an employee based on the hirer's own affirmative negligence.

B. Application of Privette Rationale to Premises Liability
The jury in this case held Unocal, a premises owner, liable to an independent contractor's employee for negligent maintenance of its property. This claim derives from section 343 of the Restatement, which states: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he [¶] (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and [¶] (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and [¶] (c) fails to exercise reasonable care to protect them against the danger." Thus, a landowner owes a duty to invitees to exercise reasonable care in maintaining the premises. (§ 343; see *95 also Rowland v. Christian (1968) 69 Cal.2d 108,119, 70 Cal.Rptr. 97, 443 P.2d 561.) It has long been held that an employee of a subcontractor is an invitee for purposes of liability under section 343. (See Gettemy v. Star House Movers (1964) 225 Cal. App.2d 636, 644-645, 37 Cal.Rptr. 441.)
Kinsman contends Privette is irrelevant because, under section 343, a landowner's liability is "direct" and not "vicarious."[4] He argues the Privette doctrine only bars claims that a landowner is "Vicariously' liable for the primary negligence of an independent contractor." However, as noted above, the Supreme Court has repeatedly rejected this pat distinction between "direct" and "vicarious" liability. (Toland, supra, 18 Cal.4th at p. 265, 74 Cal.Rptr.2d 878, 955 P.2d 504; Camargo, supra, 25 Cal.4th at p. 1243, 108 Cal. Rptr.2d 617, 25 P.3d 1096; Hooker, supra, 27 Cal.4th at p. 210, 115 Cal.Rptr.2d 853, 38 P.3d 1081.) The issue is more complex. When an independent contractor's employee sues a hirer or landowner for injuries sustained on the job, Supreme Court decisions have examined whether the defendant's liability is truly independent, or whether it actually "derives from the `act or omission' of the hired contractor, ... who has caused the injury by failing to use reasonable care in performing the work." (Toland, supra, at p. 265, 74 Cal.Rptr.2d 878, 955 P.2d 504; see also Camargo, supra, at p. 1244, 108 Cal.Rptr.2d 617, 25 P.3d 1096; Hooker, supra, at p. 212, 115 Cal.Rptr.2d 853, 38 P.3d 1081.)[5]
Some tort theories, such as the "peculiar risk" doctrine and negligent hiring, extend liability to a landowner or hirer even though the acts or omissions causing the employee's injury are entirely those of the hired contractor. Considerations of fairness and the availability of worker's compensation relief led the Supreme Court to conclude a landowner or hirer bears no liability to injured employees of independent contractors under these theories. (Privette, supra, 5 Cal.4th at p. 702, 21 Cal.Rptr.2d 72, 854 P.2d 721; Toland, supra, 18 Cal.4th at p. 270, 74 Cal.Rptr.2d 878, 955 P.2d 504; Camargo, supra, 25 Cal.4th at p. 1244, 108 Cal.Rptr.2d 617, 25 P.3d 1096.) Under other tort theories, however, a landowner may be held liable if the employee's injury results from the negligence of the hired contractor or if the *96 landowner's own acts or omissions contribute to the injury. The primary example of such a tort is the negligent exercise of retained control (§ 414). A hirer can be held liable if it failed to exercise retained control over a contractor and the plaintiff was injured due to the contractor's negligence. Or, a hirer may be held liable if, in exercising control over the contractor's work, the hirer's negligent act or omission caused or contributed to the plaintiffs injury. In light of the fairness principles expressed in Privette, the hirer bears liability to an independent contractor's employee only in the second scenarioi.e., when the hirer's own exercise of control affirmatively contributes to injuries suffered by the employee. (Hooker, supra, 27 Cal.4th at p. 210, 115 Cal.Rptr.2d 853, 38 P.3d 1081; see also Kinney v. CSB Construction, Inc. (2001) 87 Cal.App.4th 28, 36, 103 Cal.Rptr.2d 594 [no liability under section 414 where hirer fails to exercise a general supervisory power and there is no evidence hirer's conduct contributed to the contractor's negligence]; Zamudio v. City and County of San Francisco (1999) 70 Cal.App.4th 445, 452-53, 82 Cal. Rptr.2d 664 (Zamudio) [no liability under section 414 absent hirer's direct management of the contractor's work and absent an affirmative act by hirer contributing to the employee's injury].)
Consistent with the Supreme Court's reasoning in Hooker and McKown, we conclude a premises owner's liability for injuries suffered by an independent contractor's employee due to a dangerous condition on the land created by the contractor is limited by the Privette doctrine to only those cases in which the owner has control over the dangerous condition and acts, or fails to act, in a manner that affirmatively contributes to the employee's injury. A premises owner's liability under section 343 is like that under section 414 (retained control): It may arise if the plaintiff is injured by a dangerous condition the landowner created, or knowingly failed to remedy; or, it may arise if the plaintiff is injured by a dangerous condition created entirely by third parties, or the plaintiff himself, and beyond the landowner's power to control. In this second context, the Privette doctrine permits recovery by a contractor's employee only when the landowner has actively or affirmatively contributed to the employee's injury from the dangerous condition.[6]
Two appellate decisions issued before Hooker and McKown considered the application of Privette to a landowner's liability for a dangerous condition on the property. Both appear to be consistent with our conclusion that a contractor's employee cannot recover under this theory unless the landowner had control over the dangerous condition and affirmatively contributed to the employee's injury.[7]
*97 In Zamudio, supra, 70 Cal.App.4th 445, 447, 82 Cal.Rptr.2d 664, a subcontractor's employee was injured when he fell through a plank at a construction site. He sued the site owner, the City and County of San Francisco (CCSF), on numerous theories including the maintenance of a dangerous condition on public land. (Gov.Code, § 830 et seq.) However, the Zamudio court noted the only "dangerous condition" was a plank that was owned, and placed in a potentially dangerous position, by the plaintiffs employer. (Zamudio, supra, at pp. 454-455, 82 Cal.Rptr.2d 664.) The danger was created entirely by the contractor's work and did not arise from the property itself. (Id. at p. 455, 82 Cal. Rptr.2d 664.) Under these circumstances, the court concluded: "As long as CCSF did not act affirmatively to create or increase the risk of injury or did not retain control over the specific injury-causing activities of the injured worker's employer, Privette and Toland bar recovery. [Citation.]" (Ibid.)
The facts in an earlier case, Grahn v. Tosco Corp. (1997) 58 Cal.App.4th 1373, 68 Cal.Rptr .2d 806 (Grahn), are very similar to those in the case before us. Grahn was exposed to asbestos when he worked for an independent contractor, J.L. Thorpe & Sons (Thorpe), at various jobsites, installing and removing insulation materials. (Id. at pp. 1379-1380, 68 Cal.Rptr.2d 806.) He was later diagnosed with asbestos-related lung disease. Grahn sued approximately 200 defendants, including the owners of several properties where he had worked. Grahn alleged that during such work, he was exposed to asbestos. (Id. at p. 1380, 68 Cal.Rptr.2d 806.) The case proceeded to trial against one such premises owner, Tosco Corporation (Tosco), on three theories: (1) Tosco was negligent in hiring Thorpe; (2) Tosco negligently failed to exercise the control it retained over Thorpe's work; and (3) "Tosco was negligent in the use and maintenance of its premises thereby exposing others to an unreasonable risk of harm." (Ibid.) We approach Grahn with some trepidation, since the Supreme Court has expressly disapproved of the holdings this case announced regarding a landowner's liability for negligent hiring (Camargo, supra, 25 Cal.4th at pp. 1243-1245, 108 Cal.Rptr.2d 617, 25 P.3d 1096) and negligent exercise of retained control (Hooker, supra, 27 Cal.4th at pp. 209-210, 214, 115 Cal. Rptr.2d 853, 38 P.3d 1081). However, the observations in Grahn about general premises liability remain good law.
In Grahn, as in the case before us, the premises owner challenged a generic jury instruction describing a landowner's duty to maintain the premises in a safe condition. Tosco argued the instruction was "prejudicially misleading" because, contrary to California law on premises liability and the principles expressed in Privette, the instruction failed to distinguish between unsafe conditions created by the contractor during the course of the work, or sought to be remedied as part of the contractor's work, and unsafe conditions "inhering in the premises where the work is to be done...." (Grahn, supra, 58 Cal. App.4th at p. 1397, 68 Cal.Rptr.2d 806.) After reviewing several pre-Privette cases, the court observed that employees of independent contractors have only been allowed to recover from property owners under the dangerous condition theory if the conditions were "entirely extraneous to the performance of their work and indisputably within the control of the premises *98 owner/hirer." (Id. at p. 1400, 68 Cal. Rptr.2d 806.) Grahn therefore summarized the duty of a premises owner as follows: "Where the operative details of the work are not under the control of the hirer and the dangerous condition causing injury is either created by the independent contractor or is, at least in part, the object of the work of the independent contractor, the duty to protect the independent contractor's employees from hazards resides with the independent contractor and not the hirer who may also generally control the premises. In such cases, the hirer is entitled to assume that the independent contractor will perform its responsibilities in a safe manner, taking proper care and precautions to assure the safety of its employees. [Citation.]" (Id. at p. 1398, 68 Cal.Rptr.2d 806.)
Furthermore, Grahn observed that imposing liability on a premises owner for dangerous conditions that were created by the independent contractor, or "the very subject of the work to be performed" by the contractor, "is tantamount to assigning vicarious liability" to the premises owner and thus clearly runs afoul of Privette. (Grahn, supra, 58 Cal.App.4th at pp. 1400-1401, 68 Cal.Rptr.2d 806.) Based on California premises law and Privette, Grahn announced a rule limiting the liability of premises owners in this context: "[I]n the absence of the hirer's retention of control of the methods or operative details of the independent contractor's work, the hirer cannot be held liable to the independent contractor's employee as a result of the dangerous condition on the hirer's property if: 1) a preexisting dangerous condition was known or reasonably discoverable by the contractor, and the condition is the subject of at least a part of the work contemplated by the independent contractor; or 2) the contractor creates the dangerous condition on the hirer's property and the hirer does not increase the risk of harm by its own affirmative conduct." (Id. at p. 1401, 68 Cal.Rptr.2d 806.)
Grahn's formulation has drawn some criticism. (See Wise, The Marine Terminal and Its Contracts: Avoiding and Shifting the Risks of Marine Terminal Operations (2001) 13 U.S.F. Maritime L.J. 227, 248 [stating Grahn's second prong "is inconsistent with Privette, Toland and Camargo because it focuses on the condition of the property created by the contractor, not the hirer's conduct"].) We announce a simpler rule that appears to be more in line with recent Supreme Court holdings, and the liability limitation expressed by Division Five of this court in Zamudio: A property owner cannot be liable to a contractor's employee for a dangerous condition a contractor has created on the land unless the owner exercised control over the condition and, in doing so, affirmatively contributed to the employee's injury. (See Zamudio, supra, 70 Cal.App.4th at p. 455, 82 Cal.Rptr.2d 664; cf. Hooker, supra, 27 Cal.4th at p. 210, 115 Cal.Rptr.2d 853, 38 P.3d 1081.) If the owner did not have control over the condition, or did not exercise the control in a manner that affirmatively contributed to the plaintiffs injury, any liability imposed on the owner would be essentially "vicarious" or "derivative" of the primary negligence of the contractor. (See Toland, supra, 18 Cal.4th at p. 265, 74 Cal.Rptr.2d 878, 955 P.2d 504.) This is impermissible under Privette and Toland. Unlike the rule announced in Grahn, under our formulation a premises owner's liability to employees of independent contractors depends upon the knowledge and acts of the owner. The rule we announce also avoids Grahn's error in permitting liability against premises owners who did not exercise control over the work giving rise to a dangerous condition. (See Hooker, supra, at p. 210, 214, 115 Cal. Rptr.2d 853, 38 P.3d 1081 [disapproving *99 Grahn's holding that a hirer may be liable even though it did not exercise control it had retained].)

III. Instructional Error
Accepting that the Privette doctrine may require some limitation on a landowner's liability to employees of independent contractors, Kinsman argues Unocal's liability should not be limited in his case because: (1) the dangerous condition was created by neighboring contractors, not Kinsman's employer; (2) the jury did not find any party other than Unocal "negligent"; and (3) Unocal did not prove Kinsman's employer carried worker's compensation insurance.[8]

A. Dangerous Condition Created by Neighboring Contractors
In Grahn, the court concluded a jury instruction was misleading because it allowed the jury to assign a premises owner vicarious liability for a dangerous condition created and controlled by the contractor. (Grahn, supra, 58 Cal.App.4th at pp. 1400-1401, 68 Cal.Rptr.2d 806.) The jury in the asbestos case now before us received an almost identical instruction, which is based on BAJI 8.01. It states, in relevant part: "The owner or occupant of premises is under a duty to exercise ordinary care in the use, maintenance and management of the premises in order to avoid exposing persons to an unreasonable risk of harm. This duty exists whether the risk of harm is caused by the natural condition of the premises or by an artificial condition created on the premises. This duty is owed to persons on the premises and to persons off the premises. A failure to fulfill this duty is negligence. [¶] You shall determine whether a person under the same or similar circumstances as defendant UNOCAL should have foreseen that a person such as plaintiff RAY KINSMAN would be exposed to an unreasonable risk of harm. If you so find, you are instructed that the defendant UNOCAL owed plaintiff RAY KINSMAN a duty of care and you should determine if the defendant exercised that care, considering all the surrounding circumstances shown by the evidence." (Compare Grahn, supra, at p. 1397, 68 Cal.Rptr.2d 806.)
The parties argued at length below whether Grahn required a modification of this generic duty instruction, or separate special instructions, to advise the jury of the limited duty a premises owner owes to the employee of an independent contractor. Kinsman claimed no such modification or additional instructions were appropriate because Grahn's holding is limited to situations in which the plaintiffs injury results "solely" from work he performed for his employer. Although Kinsman was exposed to some asbestos when he "tied in" scaffolding to insulated pipes and equipment, the evidence suggested most of his exposure resulted from the work of neighboring insulators, who left asbestos-containing debris on Kinsman's scaffolding and whose work released asbestos into the air in the area of the refinery where Kinsman worked. Because the dangerous condition (i.e., airborne asbestos) was not. created by Kinsman or his employer, but primarily resulted from the
activities of other contractors on-site, Kinsman argued *100 he was akin to an injured bystander to whom Unocal owed a full duty of care notwithstanding Grahn or the Privette line of cases. The trial court agreed and gave the BAJI 8.0 series of instructions on premises liability without modification.
Kinsman's argument reads a limitation into the Privette doctrine that is unsupported by case law and inconsistent with the policies the doctrine serves. According to Kinsman, a contractor's employee is precluded from obtaining recovery from a premises owner for injuries he sustains on the property only if he was injured by a dangerous condition his own employer created in doing the contracted-for work. And, if the danger was created by other contractors working nearby, the premises owner can be held liable regardless of whether it actually had control over the other contractors' activities. Kinsman's position illustrates the aspect of Grahn that is inconsistent with Privette namely, its focus on the activities of the contractor rather than the owner. Considering the fairness rationale underlying the Privette line of cases, it should not matter whether a dangerous condition was created by the plaintiffs employer or another contractor. If the hazard was not created by the property owner, or within the owner's control, the owner should not bear liability for an injury that is compensable under the worker's compensation system.
Consistent with Privette and cases following it, we conclude a contractor's employee such as Kinsman may not recover under section 343 from a landowner such as Unocal absent proof Unocal had control over the allegedly dangerous condition on its property and affirmatively contributed to the injury. Whether the dangerous condition was created primarily by Kinsman's employer or another contractor is irrelevant in this analysis; the appropriate focus is on Unocal's relation to the condition.
We find support for this conclusion in Smith v. ACandS, Inc. (1994) 31 Cal. App.4th 77, 37 Cal.Rptr.2d 457, disapproved on another ground in Camargo, supra, 25 Cal.4th at p. 1245, 108 Cal. Rptr.2d 617, 25 P.3d 1096 (Smith). The plaintiff in Smith developed asbestosis and asbestos-related pleural disease after he worked as a pipefitter at many jobsites, including two power plants built by Pacific Gas and Electric Company (PG & E). (Id. at p. 82, 37 Cal.Rptr.2d 457.) Much of Smith's asbestos exposure resulted from his work in proximity to other trades, especially insulators. (Id. at pp. 84-85, 37 Cal.Rptr.2d 457.) Smith proceeded to trial on his personal injury claims, and the jury found PG & E negligent and negligent per se and "held [PG & E] vicariously liable for hiring asbestos insulation contractors whose work created a peculiar risk of harm to others." (Id. at p. 82, 37 Cal. Rptr.2d 457.) Having determined that the Supreme Court's decision in Privette applied retroactively to the case, the Smith court considered whether Privette bars liability under the peculiar risk doctrine when the allegedly negligent party was not the plaintiffs employer, but a different contractor (or several different contractors). (Id. at p. 95, 21 Cal.Rptr.2d 72, 854 P.2d 721.) The court concluded it did: "Privette marks a return to the `original form' of the doctrine of peculiar risk: a landowner is liable to innocent bystanders and neighboring property owners injured by a hired contractor's negligent performance of dangerous work on the land. [Citation.] A hired contractor's employee is not a bystander, whether judged in relation to his own work or in relation to another contractor's activities on a joint project" (Id. at pp. 95-96, 21 Cal.Rptr.2d *101 72, 854 P.2d 721, italics added.)[9]
We recognize that all the policy arguments discussed in Privette do not apply with equal force when an employee's injury is caused by acts of a neighboring contractor, rather than his own employer. Such a situation does not present the striking unfairness that results when the hirer of a contractor bears a full burden of liability but the liability of the party who is primarily responsible for causing the injury (the plaintiffs employer) is limited to providing worker's compensation. In Privette, the Supreme Court discussed this fairness concern and further observed that the exclusivity provisions of the worker's compensation statutes prohibit the hirer from obtaining indemnification from the plaintiffs employer, even though the employer was responsible for causing the injury. (Privette, supra, 5 Cal.4th at p. 701, 21 Cal.Rptr.2d 72, 854 P.2d 721.) Where a worker's injury is caused by a neighboring contractor and not his employer, the worker's compensation statutes do not prevent the premises owner from seeking equitable indemnity from the contractor responsible for creating the hazard.
However, we believe it is equally unfair to impose liability on the hirer when a contractor's employee is injured from a dangerous condition created by his own employer or by a neighboring contractor notwithstanding the availability of equitable indemnity. In addition, limiting a hirer's liability for injuries caused by neighboring contractors is consistent with other policies discussed in Privette and its progeny. As the Smith court observed, workers' compensation benefits are available to an employee injured on the job regardless of whether the injury results from acts of his own employer or of another contractor. (Smith, supra, 31 Cal.App.4th at p. 96, 37 Cal.Rptr.2d 457.) Landowners who hire contractors indirectly pay the cost of workers' compensation coverage; therefore, imposing liability on landowners for injuries caused by any of the contractors they employ "would unfairly subject them to multiple costs for a single injury for which they are not personally at fault. (Privette [,] supra, 5 Cal.4th at p. 699 [21 Cal.Rptr.2d 72, 854 P.2d 721].)" (Smith, supra, at p. 96, 37 Cal.Rptr.2d 457; see also Camargo, supra, 25 Cal.4th at pp. 1244-1245, 108 Cal.Rptr.2d 617, 25 P.3d 1096 [hirer who has indirectly paid the cost of worker's compensation coverage should also enjoy the benefit of exclusivity provisions].) And, as is the case when a plaintiffs own employer causes the injury, permitting recovery from a landowner for injuries caused by other contractors "would give contractors' employees `an unwarranted windfall' by exempting `a single class of employees, those who work for independent contractors, from the statutorily mandated limits of workers' compensation. ...' ([Privette, supra,] at p. 700, [21 Cal.Rptr.2d 72, 854 P.2d 721] citations omitted.)" (Smith, supra, at p. 96, 37 Cal. Rptr.2d 457; see also Camargo, supra, at p. 1245, 108 Cal.Rptr.2d 617, 25 P.3d 1096.)

B. Dangerous Condition Not Negligently Created by Contractor
Kinsman also seeks to distinguish Grahn and Smith because Unocal did not *102 prove the insulation work at its refinery was performed by independent contractors, as opposed to Unocal's own employees. He also argues there was no evidence that the insulatorsor, indeed, any of the other contractorswere negligent. However, these arguments directly contradict positions Kinsman took at trial. The evidence did not establish, and apparently the parties did not know, what company employed the insulators who worked at the Unocal refinery nearly 50 years ago. Yet, until shortly before the case was submitted to the jury, Kinsman pursued a claim against Unocal for negligent hiring based on the theory Unocal hired insulation contractors who negligently exposed him to asbestos.[10] Kinsman offered no evidence below to suggest the insulators were not employed by independent contractors, and the jury could reasonably have found, as Kinsman's own counsel apparently assumed, that the insulators worked for independent contractors just as Kinsman himself did. Similarly, Kinsman's assertion that special instructions were unnecessary because Unocal was "the only entity shown to be negligent" ignores evidence suggesting the insulators acted carelessly in releasing asbestos dust and evidence showing Kinsman's employer, Burke & Reynolds, failed to discuss the dangers of asbestos in safety meetings and failed to require its employees to wear masks. Moreover, Kinsman's insistence that Unocal was the only negligent party is belied by the jury verdict, which assigned only 15 percent of the fault to Unocal and 85 percent to unnamed "all others."
Nevertheless, setting aside these factual problems and accepting Kinsman's premise, his argument presents this question of law: Do the limitations on liability established in Privette and its progeny apply when the dangerous condition that injured a contractor's employee was not created by the contractor's negligence? We conclude the limitations apply.
Although some Supreme Court cases frame the issue as one concerning a hirer's liability for injuries caused by a contractor's negligent performance of its work (see, e.g., Privette, supra, 5 Cal.4th at p. 691, 21 Cal.Rptr.2d 72, 854 P.2d 721; Toland, supra, 18 Cal.4th at p. 256, 74 Cal. Rptr.2d 878, 955 P.2d 504), none of the cases discusses, let alone requires, findings of negligence by the independent contractor. This is not surprising since, in such cases, the plaintiff has recovered worker's compensation and is precluded from suing his employer for negligence. Moreover, in the peculiar risk cases, the Supreme Court was addressing theories of hirer liability premised entirely on the contractor's failure to exercise reasonable care in performing inherently dangerous work. In most cases, it is fair to equate a hired contractor's "`act or omission' ... caus[ing] the injury" with a "fail[ure] to use reasonable care in performing the work" (Toland, supra, 18 Cal.4th at p. 265, 74 Cal.Rptr.2d *103 878, 955 P.2d 504) because the dangerous condition that led to the employee's injury is fairly obvious. Thus, the dangerous condition is capable of being foreseen and prevented by the contractor. But this inference is not necessarily valid in the context of hidden or latent dangerous conditions. If a danger is hidden or unknown (such as the danger posed by airborne asbestos dust was arguably unknown to some in the 1950s), an unwitting contractor could conceivably create a dangerous condition that injures workers without having performed its job negligently. Assuming the contractor could not have foreseen the risk created by its work, the contractor was not "negligent" in performing the work.
When an unknown or hidden danger is created by the work being done by the contractor, we do not think proof of the contractor's "negligence" is a necessary prerequisite to application of the principles expressed in Privette and the cases following it. None of the Supreme Court's decisions premise a hirer's limited liability on a finding of negligence by the independent contractor. Indeed, the court's recent decision in Hooker does not mention negligence by the contractor at all. In Hooker, the employee-plaintiff left his crane in an unsafe configuration, and he was killed when he returned to the crane and attempted to operate it without correcting the position. (Hooker, supra, 27 Cal.4th at p. 202, 115 Cal.Rptr.2d 853, 38 P.3d 1081.) The facts recited by the court clearly show the hirer, Caltrans, retained control over safety conditions at the jobsite, yet there is no suggestion that the plaintiffs employer was negligent with regard to the accident. (Id. at pp. 202-203, 214, 115 Cal.Rptr.2d 853, 38 P.3d 1081.) The hirer's retained control of the jobsite was the plaintiffs sole theory of negligence.
Furthermore, grafting onto Privette a requirement that the hired contractor was negligent would be inconsistent with the policies underlying the doctrine. The "compelling consideration" that led the Supreme Court to abolish peculiar risk liability in Privette and Toland was the ability of injured employees to obtain worker's compensation. (Smith, supra, 31 Cal.App.4th at p. 96, 37 Cal.Rptr.2d 457.) Because the contractor's employee is assured a recovery under the worker's compensation statutes, and because the hirer has indirectly paid the cost of worker's compensation coverage in the contract price, the court has reasoned the hirer should not face further liability when it did not affirmatively contribute to causing the employee's injury. (See, e.g., Hooker, supra, 27 Cal.4th at pp. 210, 213, 115 Cal.Rptr.2d 853, 38 P.3d 1081; Camargo, supra, 25 Cal.4th at pp. 1244-1245, 108 Cal.Rptr.2d 617, 25 P.3d 1096; Privette, supra, 5 Cal.4th at pp. 696, 699, 21 Cal.Rptr.2d 72, 854 P.2d 721.) These principles apply with the same force when the plaintiffs employer was not negligent. The worker's compensation system guarantees employees a recovery for workplace injuries regardless of fault. (Privette, supra, at p. 697, 21 Cal.Rptr.2d 72, 854 P.2d 721.) Therefore, a contractor's employee can be compensated for a workplace injury regardless of whether his employer's negligence caused the injury. It would be illogical to require a hirer to prove negligence by the independent contractor when no such showing is required by the injured employee. Moreover, conditioning recovery from hirers or premises owners on a showing of negligence by the hired contractor would unfairly benefit some employees but not others.

C. Proof of Worker's Compensation Coverage
Finally, Kinsman contends Unocal could not take advantage of the Privette *104 rule because Unocal did not prove Burke & Reynolds carried workers' compensation insurance. Kinsman posits such proof of coverage as a condition precedent that premises owners must satisfy before they may reap the benefits of limited liability under Privette. Not surprisingly, Kinsman cites no authority for this position. Indeed, the Supreme Court suggested otherwise when it observed that an employee of an uninsured contractor can obtain workers' compensation benefits for a workplace injury under Labor Code section 3716. (See Toland, supra, 18 Cal.4th at p. 261, 74 Cal.Rptr.2d 878, 955 P.2d 504.) The Workers' Compensation Act entitles all employees to recover benefits for workplace injuries, including those whose employers do not carry workers' compensation insurance. (Lab.Code, § 3716 [establishing uninsured employers fund]; Privette, supra, 5 Cal.4th at pp. 696-697, 21 Cal.Rptr.2d 72, 854 P.2d 721.) Because the workers' compensation scheme guarantees a recovery to a contractor's employee who is injured on the job, regardless of whether his employer is insured, we see no reason to graft a "proof of insurance" requirement onto the Privette doctrine. Although Kinsman may be correct in observing that an employee can pursue an uninsured employer for an additional civil recovery (see Lab.Code, § 3715, subd. (a)), this fact does not alter the unfairness of imposing liability on a landowner for the contractor's negligent acts. Even if his employer lacks insurance, a contractor's employee has a guaranteed source of recovery for workplace injury; simply because the law allows the employee to seek an additional recovery from his employer under some circumstances does not justify expanding liability to the landowner for the contractor's failure to insure.

IV. Prejudice
Though not phrased as such, many of Kinsman's arguments distinguishing Privette boil down to a claim that the trial court's reading of BAJI 8.01 was not prejudicial given the evidence in the case. However, our standard of review on this question favors the appellant, not the respondent. On an appeal from an allegedly erroneous jury instruction, we must view the evidence in the light most favorable to the appellant's claim of instructional error, and we must reverse if it appears the jury, properly instructed, might have decided in the appellant's favor. (Henderson v. Harnischfeger Corp. (1974) 12 Cal.3d 663, 674, 117 Cal.Rptr. 1, 527 P.2d 353; GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc. (2000) 83 Cal.App.4th 409, 423, 99 Cal.Rptr.2d 665.)
We conclude the trial court's failure to instruct the jury on Unocal's limited duty to Kinsman likely affected the verdict and constituted prejudicial error. (See Soule v. General Motors Corp. (1994) 8 Cal.4th 548, 580, 34 Cal.Rptr.2d 607, 882 P.2d 298 ["Instructional error in a civil case is prejudicial `where it seems probable' that the error `prejudicially affected the verdict.' [Citations.]"].) Kinsman's theory of negligence consisted of evidence showing Unocal knew asbestos was present in areas of the refinery where Kinsman worked, Unocal had access to information such that it knew or should have known the asbestos in its refinery was dangerous, and Unocal contracted for work that involved the release of asbestos fibers into the air without warning Kinsman of the hazard or urging him to wear a mask. Based on this evidence and the BAJI 8.01 instruction, the jury held Unocal liable for negligent maintenance of its land. However, the jury also found Unocal did not retain control over the methods or manner in which Kinsman performed his work. Given this *105 finding, if the jury had been instructed about the limits on Unocal's liability described in this opinion, it would likely have concluded Unocal had no liability to Kinsman whatsoeverbecause Unocal did not retain control over the dangerous condition (i.e., airborne asbestos) present on its land, or because the evidence did not show that Unocal affirmatively contributed to Kinsman's injury.

DISPOSITION
The judgment is reversed and the matter remanded for a new trial in accord with this opinion. Each side to bear its own costs on appeal.
We concur: McGUINESS, P.J., and CORRIGAN, J.
NOTES
[1] In light of our decision on this ground, we do not address Unocal's remaining arguments on appeal.
[2] As other courts have noted, "the person employing the independent contractor may be referred to as the `employer,' `principal,' `hirer' or, depending on the circumstances of the case, as the `owner,' `developer' or `general contractor.'" (Toland v. Sunland Housing Group, Inc. (1998) 18 Cal.4th 253, 271, 74 Cal.Rptr.2d 878, 955 P.2d 504 (cone. & dis. opn. of Werdegar, J.) (Toland ).) In this opinion, we use "hirer" as a general term to denote the person who hires an independent contractor. When discussing the specific context of premises liability, we shall refer to the hirer as the "premises owner," "property owner'' or "landowner."
[3] All section references are to the Restatement Second of Torts unless otherwise indicated.
[4] Section 343 does not appear in chapter 15 of the Restatement, and thus it is not an express exception to the general rule of nonliability to a contractor's employees. (See § 409 ["Except as stated in §§ 410-429, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants"].) However, section 343 operates as such an exception if used to impose liability on a landowner when a contractor's employee suffers injury due to a dangerous condition that was created by the independent contractor.
[5] Thus, when a landowner violates a separate duty of care owed to the plaintiff, and thereby contributes to the plaintiff's injury, the landowner may be held liable despite the Privette rule. (Ray v. Silverado Constructors (2002) 98 Cal.App.4th 1120, 120 Cal.Rptr.2d 251 (Ray).) In Ray, the plaintiff's decedent was killed when high winds blew heavy construction materials off a bridge and onto the roadway below, and a heavy object struck him in the head. The Fourth District Court of Appeal, Division Three reversed an entry of summary judgment in favor of the project's owner and general contractor because triable issues of fact remained regarding whether these entities had an independent duty (pursuant to contract, case law and regulations) to close the roadway. (Id. at pp. 1128-1129, 120 Cal. Rptr.2d 251.) The court observed the Privette doctrine does not bar all "direct" liability actions against owners and general contractors, and since the plaintiff asserted such a "direct" claimwhich did not derive from negligence of the subcontractorit was not precluded as a matter of law. (Id. at p. 1129, 120 Cal.Rptr.2d 251.)
[6] The recent decision in Ray v. Silverado Constructors (see ante, fn. 5) does not compel a different result. Ray simply held the Privette doctrine does not provide an absolute defense for a property owner who allegedly violated an independent duty owed to the plaintiff. (Ray, supra, 98 Cal.App.4th at p. 1130, 120 Cal.Rptr.2d251.)
[7] Our decision is also consistent with limitations other states have imposed on premises owners' liability to employees of independent contractors. (See, e.g., Lee v. E.I. Dupont De Nemours & Co. (5th Cir.2001) 249 F.3d 362, 364-365 [under Mississippi law, an owner is not liable to contractor's employees under premises liability theory unless the owner retained a substantial right of control over the contractor's work and the employee's injuries arose from or were connected to the work]; West v. Briggs & Stratton Corp. (2000) 244 Ga.App. 840, 844-845 [536 S.E.2d 828, 832] [owner has no duty to maintain safe premises for independent contractor's employees if owner has relinquished possession of premises, in whole or in part, and owner does not control or direct the work being done]; Dow Chemical Co. v. Bright (Tex.2002) 89 S.W.3d 602, 606 [where dangerous condition is created by an independent contractor's work activity, owner owes no duty to contractor's employees unless owner exercises control over the contractor's work].)
[8] Kinsman also asserted for the first time at oral argument that Unocal should be held liable because it retained control over air quality management in the refinery. However, this factual question was never presented to the jury, and it cannot be fairly inferred from the jury's negligence verdict. If, on retrial, a properly instructed jury concludes Unocal did retain control over air quality at the Wilmington refinery, and did affirmatively contribute to Kinsman's exposure to asbestos dust, these factual findings would support the imposition of liability on Unocal under the rule we have articulated.
[9] At oral argument, Kinsman attempted to distinguish Smith on the ground that there was a finding of negligence (and strict liability) against the insulation contractor in Smith, whereas the jury made no such finding here. For reasons discussed in section III. B., infra, we do not believe this distinction is relevant. Nor does it appear the Smith court considered the insulation contractor's fault to be relevant, since the court reversed the jury's verdicts against this contractor due to insufficient evidence. (Smith, supra, 31 Cal.App.4th at pp. 82, 87-89, 37 Cal.Rptr.2d 457.)
[10] The court questioned Kinsman's counsel about this negligent hiring theory during at least two jury instruction conferences: "[The Court]: Negligent hiring of[Mr. Kelly]: The insulators, Your Honor. [¶] That were doing their job in such a way to create a health hazard to those who were below it.... [The Court]: What would be the evidence you would have on the negligent hiring theory? [Mr. Kelly]: Evidence would be, it is a res ipsa-type theory. The fact they did their job in such a way to cause exposure to my client is negligent in and of itself." In another conference, the court asked, "On negligent hiring, what's your theory?" Kinsman's counsel responded, "That Unocal hired insulators who may or may not have been competent to insulate, but they were not competent in protecting workers exposed to the hazardous materials which their insulators used. [¶] In other words, the insulators didn't take care not to expose other people who didn't work "for the insulators, such as Mr. Kinsman."